Robert J. Nelson (CA 132797)
Nimish R. Desai (CA 244953)
Nicholas R. Hartmann (CA 301049)
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
275 Battery Street, 29th Floor
San Francisco, CA  94111-3339
Telephone:  415.956.1000
Facsimile:  415.956.1008
rnelson@lchb.com
ndesai@lchb.com
nhartmann@lchb.com

Mark S. Hardiman (CA 136602)
**NELSON HARDIMAN, LLP**
1100 Glendon Avenue, 14th Floor
Los Angeles, CA  90024
Telephone:  310.203.2800
Facsimile:  310.203.2727
mhardiman@nelsonhardiman.com

*Attorneys for Plaintiff-Relator Jack Waters*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* JACK WATERS,<br><br>Plaintiff,<br><br>v.<br><br>ENVISION HEALTHCARE CORPORATION, et al.,<br><br>Defendants. | Case No.  2:19-CV-0873 TLN AC<br><br>**FIRST AMENDED FALSE CLAIMS ACT COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

# TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................... 1

JURISDICTION AND VENUE ........................................................................................... 1

PARTIES ............................................................................................................................. 2

    A.    Plaintiff and Relator ............................................................................. 2

    B.    Defendants Envision and AmSurg ...................................................... 3

    C.    Defendant AmSurg ASCs and AmSurg Anesthesia Companies ......... 5

REGULATORY BACKGROUND ..................................................................................... 36

    A.    Medicare Coverage of ASC and Professional Services ..................... 36

    B.    TRICARE Coverage of ASC and Professional Services ................... 38

FACTUAL ALLEGATIONS ............................................................................................. 39

    A.    AmSurg CRNA Contracts .................................................................. 39

    B.    AmSurg Ownership and Management of AmSurg ASCs .................... 45

    C.    AmSurg Ownership and Management of AmSurg Anesthesia Companies ......... 49

    D.    Defendants Knowledge of Applicable Laws ...................................... 52

    E.    Defendants' First Kickback Scheme .................................................. 57

    F.    Defendants' Second Kickback Scheme .............................................. 58

    G.    Improper Incentives Caused by Defendants' Kickback Schemes ....... 60

FIRST CLAIM FOR RELIEF FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS  31 U.S.C. § 3729(A)(1) (AGAINST ALL DEFENDANTS) .................................... 62

SECOND CLAIM FOR RELIEF FALSE CLAIMS ACT: MAKING OR USING FALSE RECORD OR STATEMENT  31 U.S.C. § 3729(A)(2)  (AGAINST ALL DEFENDANTS) ........................................................................................................... 64

THIRD CLAIM FOR RELIEF FALSE CLAIMS ACT: REVERSE FALSE CLAIMS 31 U.S.C. § 3729(A)(1)(G) (AGAINST ALL DEFENDANTS) .................................... 65

FOURTH CLAIM FOR RELIEF FALSE CLAIMS ACT: CONSPIRACY 31 U.S.C. § 3729(A)(1)(C) (AGAINST ALL DEFENDANTS) ................................................... 65

PRAYER ............................................................................................................................ 66

Plaintiff United States of America, by and through Relator Jack Waters, alleges as follows:

**INTRODUCTION**

1.      Relator brings this action on behalf of the United States against Envision Healthcare Corporation's ("Envision") Ambulatory Services Division, which owns and manages approximately 260 ambulatory surgery centers ("ASCs") in the United States in partnership with physicians who perform surgeries on their patients there ("ASC Physician Owners") (collectively, the "AmSurg ASCs").

2.      Since at least 2012 and continuing through the present, Envision, through its network of AmSurg ASCs, has been knowingly submitting or causing to be submitted false and fraudulent claims and statements to Medicare and TRICARE for anesthesia services that were the result of illegal remuneration (*i.e.*, kickbacks) to Envision and the ASC Physician Owners.  This scheme is perpetuated through a series of anesthesia management companies owned by the ASC Physician Owners and Envision (collectively, the "AmSurg Anesthesia Companies") that contract with independent licensed anesthesia professionals to provide anesthesia services in exchange for signing over their right to reimbursement for those services.  As a condition of obtaining access to anesthesia referrals at one of the AmSurg ASCs, the anesthesia professionals are required to accept a per diem rate for their services that is far below the anesthesia revenue generated and are required to "kickback" the remaining anesthesia profit to Envision.

3.      At several of the AmSurg ASCs, Envision engages in a further "kickback" scheme by sharing a portion of this anesthesia revenue with the ASC Physician Owners in exchange for their referrals to the AmSurg ASCs.  In this way, many of the AmSurg ASCs have also been knowingly submitting or causing to be submitted false and fraudulent claims and statements to Medicare and TRICARE for surgical services and facility fees that were the result of illegal remuneration (*i.e.*, kickbacks) to Envision and the ASC Physician Owners.

**JURISDICTION AND VENUE**

4.      This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1345, and 3732.  The Court may exercise personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because the False Claims Act ("FCA") authorizes nationwide service of process, Defendants

- 1 -

Envision and its Ambulatory Services Division conduct business in this District, and the other Defendants are related U.S. corporations, companies and partnerships that transact business in and have the required minimal contacts with the United States.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)–(c) and 31 U.S.C. § 3732(a) because Defendants Envision and its Ambulatory Services Division transact business in this District, Defendants Central California Endoscopy Center, LP and AmSurg Fresno CA Anesthesia, LP, Folsom Anesthesia, LP, and Folsom Endoscopy Center, LLC are located in this district, and Envision's Ambulatory Services Division paid kickbacks to ASC Physician Owners in this District.

6.      Relator is an original source as defined by 31 U.S.C. § 3730(e)(4)(B) and voluntarily disclosed to the United States the information on which the allegations and transactions described in this action are based prior to the filing of this action.

## PARTIES

### A.      Plaintiff and Relator

7.      Relator brings this FCA action on behalf of Plaintiff United States and its agency, the United States Department of Health and Human Services ("DHHS") and its component, the Center for Medicare & Medicaid Services ("CMS"), which administer the Medicare Program, a federal healthcare program that provides health insurance to persons who are aged 65 and over or who have certain disabilities.  At all times material to this action, DHHS-CMS administered Part B of the Medicare program, which paid benefits from funds provided by the Federal Government, including payment of claims to AmSurg ASCs, ASC Physician Owners, and AmSurg Anesthesia Companies for their provision of ASC services to Medicare patients.

8.      Relator also brings this action on behalf of the United States and its agency, the United States Department of Defense's ("USDOD") Military Health System and its components, the Defense Health Agency ("DHA") and, prior to October 2013, the Tricare Management Activity ("TMA"), which administer the TRICARE program, a federal healthcare program that provides civilian health insurance to U.S. military members, retirees and their dependents.  At all times material to this action, USDOD's DHA or TMA administered the TRICARE program,

1   which paid benefits from funds provided by the Federal Government, including payment of

2   claims to AmSurg ASCs, ASC Physician Owners, and AmSurg Anesthesia Companies for their

3   provision of ASC services to TRICARE patients.

4           9.     Relator Jack Waters is a resident of St. George, Utah and a licensed certified

5   registered nurse anesthetist ("CRNA") in good standing in the State of Utah.  Starting on April 9,

6   2012, and ending on or about April 26, 2020, Relator was a CRNA independent contractor for

7   Defendant AmSurg St. George Anesthesia, LLC, an AmSurg Anesthesia Company, and has

8   provided anesthesia services for ASC patients at Defendant St. George Endoscopy Center LLC,

9   an AmSurg ASC.  As a CRNA contracted with an AmSurg Anesthesia Company for eight years,

10   Waters has direct insider knowledge of the kickback schemes perpetrated by Envision's

11   Ambulatory Services Division, including the schemes set forth herein whereby an AmSurg ASC

12   would grant an AmSurg Anesthesia Company (owned by Envision's Ambulatory Services

13   Division and the ASC's Physician Owners) the exclusive right to provide anesthesia services to

14   the ASC's patients using contracted CRNAs paid on a per diem rate, to bill and collect the higher

15   reimbursement for anesthesia services paid by the patients' healthcare plans and programs, and

16   then to split the resulting profits from the anesthesia services with the Physician Owners who

17   referred the patients to the ASC and its exclusive anesthesia provider.  Since his AmSurg contract

18   was terminated, Relator has continued to work as a CRNA in various healthcare settings.  Based

19   on his ongoing work in the industry and interactions with healthcare professionals, Relator

20   understands that the structures and schemes described herein continue to be used widely by

21   Defendants, and is aware of no information or disclosure indicating otherwise.

22          **B.**       **Defendants Envision and AmSurg**

23           10.     Defendant Envision is a Delaware corporation with its principal place of business

24   and headquarters located at 1A Burton Hills Boulevard in Nashville, Tennessee.  Envision

25   provides a variety of hospital-based physician staffing and related management services.

26   Beginning with Envision's December 2016 merger with Defendant AmSurg Corp., Envision

27   acquired the Ambulatory Services Division, which manages and has ownership interests in

28   approximately 260 ASCs in 35 states and the District of Columbia.  Pursuant to the merger

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1   agreement, Envision assumed the liabilities of AmSurg.  Envision also has ownership interests in

2   the AmSurg Anesthesia Companies that provide anesthesia services to the AmSurg ASCs that are

3   affiliated with those companies.  In October 2018, Envision was acquired by KKR & Co. Inc.,

4   which took the company private.

5   11.   Envision's Ambulatory Services Division, located at Envision's headquarters,

6   includes Defendants AmSurg Corp., AmSurg Holdings, Inc., AmSurg, LLC, AmSurg Finance,

7   Inc., AmSurg Anesthesia Management, LLC, and various other subsidiary companies

8   (collectively, with Envision, hereinafter referred to as "AmSurg").  The President of AmSurg is

9   Phillip Clendenin.

10   12.   Defendant AmSurg Corp. is a Tennessee corporation with its principal place of

11   business listed as AmSurg's Nashville Tennessee address.  AmSurg Corp. was founded in 1986.

12   Even prior to its merger with Envision in 2016, AmSurg was known as an aggressive company in

13   the ASC business.  It grew rapidly in the 1990s and 2000s, ending 1997 with 39 ASCs, and

14   ending 2002 with 100 ASCs.  In 2007, AmSurg acquired Dallas-based National Surgical Care,

15   and in 2014, it acquired Sheridan Healthcare for $2.35 billion.  The Sheridan acquisition awarded

16   AmSurg $70 billion in market assets including more than 4,600 physician relationships in 38

17   states.  Prior to its merger with Envision and continuing through to the present, AmSurg Corp.

18   operated the Ambulatory Services Division.

19   13.   Defendant AmSurg Holdings, Inc. is a Delaware corporation, with its principal

20   place of business listed as AmSurg's Nashville Tennessee address, which holds AmSurg's

21   ownership interests in many of the AmSurg ASCs and AmSurg Anesthesia Companies and is a

22   subsidiary of Envision.  Before July 2014, Defendant AmSurg Holdings, Inc. was a Tennessee for

23   profit corporation, which merged into the Delaware corporation of the same name.

24   14.   Defendant AmSurg, LLC, is a Delaware limited liability company, with its

25   principal place of business listed as AmSurg's Nashville Tennessee address, which manages the

26   AmSurg Anesthesia Companies, including the negotiation and payment of the contracted

27   anesthesia providers' per diem rates.

28

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

**C.**     **Defendant AmSurg ASCs and AmSurg Anesthesia Companies**

15.     Each Defendant AmSurg ASC is Medicare-certified and submits claims to Medicare and TRICARE through its National Provider Identifier ("NPI") for the identified practice location.

16.     Defendant St. George Endoscopy Center LLC is a "for profit" Tennessee limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address. Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  368 E Riverside Dr, Suite B, St. George, Utah
- Members and owners:  Defendant AmSurg Holdings, Inc. and St. George Gastroenterology Partners LLC, a medical physician practice group, which included as members various ASC Physician Owners, including James Bown, M.D., Roger Siddoway, M.D., Lee J. Hixson, M.D., and Christoph Woerlein, M.D, all of whom are board-certified gastroenterologists.

17.     Defendant AmSurg St. George Anesthesia, LLC, is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant St. George Endoscopy Center LLC
- Member:  Defendant St. George Endoscopy Center LLC

18.     Defendant North Valley Endoscopy Center, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  15255 North 40th Street, Building 8, Phoenix, Arizona
- Managing member:  Defendant AmSurg Holdings, Inc.

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

19.     Defendant AmSurg North Valley Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant North Valley Endoscopy Center, LLC
- Member:  Defendant North Valley Endoscopy Center, LLC

20.     Defendant The Arcadia CA Endoscopy ASC, LP d/b/a Valley Digestive Health Center is a "for profit" Tennessee limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  488 East Santa Clara Street, Suite 102, Arcadia, California
- General Partner:  AmSurg Arcadia CA, Inc. (a Tennessee corporation whose President is Phillip Clendenin—the AmSurg President)

21.     Defendant AmSurg Arcadia Anesthesia, LP is a "for profit" Tennessee limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Billie Payne, AmSurg Senior VP – Operations
- NPI Practice Location:  Defendant The Arcadia CA Endoscopy ASC, LP d/b/a Valley Digestive Health Center
- General Partner:  AmSurg Arcadia CA, Inc. (a Tennessee corporation whose President is Phillip Clendenin—the AmSurg President)

22.     Defendant Central California Endoscopy Center, LP is a "for profit" Tennessee limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1             •     NPI Practice Location:  7055 North Fresno Street, Suite 100, Fresno,

2  California.

3             •     General Partner:  AmSurg Fresno Endoscopy, Inc. (a Tennessee

4  corporation whose President is Phillip Clendenin—the AmSurg President)

5        23.     Defendant AmSurg Fresno CA Anesthesia, LP is a "for profit" Tennessee limited

6  partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.

7  Its application for an NPI necessarily included the following information:

8             •     NPI Authorized Official:  Phillip Clendenin, AmSurg President

9             •     NPI Practice Location:  Defendant Central California Endoscopy Center,

10  LP

11             •     General Partner:  AmSurg Fresno Endoscopy, Inc. (a Tennessee

12  corporation whose President is Phillip Clendenin—the AmSurg President)

13        24.     Defendant The Endoscopy Center of the South Bay, LP d/b/a Surgery Center of

14  South Bay is a "for profit" Tennessee limited partnership with is principal place of business listed

15  as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the

16  following information:

17             •     NPI Authorized Official:  Philip Clendenin, AmSurg President

18             •     NPI Practice Location:  23560 Madison Street, Suite 109, Torrance,

19  California

20             •     General Partner:  AmSurg Torrance, Inc. (a Tennessee corporation whose

21  President is Phillip Clendenin—the AmSurg President)

22        25.     Defendant AmSurg South Bay Anesthesia, LP is a "for profit" Tennessee limited

23  partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.

24  Its application for an NPI necessarily included the following information:

25             •     NPI Authorized Official:  Philip Clendenin, AmSurg President

26             •     NPI Practice Location:  Defendant The Endoscopy Center of the South Bay

27  d/b/a Surgery Center of South Bay

28

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

- General Partner:  AmSurg Torrance, Inc. (a Tennessee corporation whose President is Phillip Clendenin—the AmSurg President)

26.    Defendant Temecula CA United Surgery Center, LP d/b/a United Surgery Center – Temecula is a "for profit" Tennessee limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Philip Clendenin, AmSurg President
- NPI Practice Location:  31469 Rancho Pueblo Road, Suite 100, Temecula, California
- General Partner:  AmSurg Temecula II, Inc. (a Tennessee corporation whose President is Phillip Clendenin—the AmSurg President)

27.    Defendant AmSurg Temecula Anesthesia Associates, LP is a "for profit" Tennessee limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Philip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Temecula CA United Surgery Center, LP d/b/a United Surgery Center – Temecula
- General Partner:  USC Temecula Holding, GP, LLC whose Manager is Clint Cromwell (former AmSurg VP and Deputy General Counsel)

28.    Defendant Temecula CA Endoscopy ASC, LP d/b/a Temecula Valley Endoscopy Center is a "for profit" Tennessee limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Philip Clendenin, AmSurg President
- NPI Practice Location:  25150 Hancock Avenue, Suite 208, Murrieta, California

FIRST AMENDED COMPLAINT
CASE NO.  2:19-CV-0873 TLN AC

1      •  General Partner:  USC Murrieta Holding GP, LLC, a Tennessee limited

2 liability company whose Manager is Clint Cromwell (former AmSurg VP and Deputy General

3 Counsel)

4    29. Defendant USC Murrieta Anesthesia Associates, LP is a "for profit" Tennessee

5 limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee

6 address.  Its application for an NPI necessarily included the following information:

7      •  NPI Authorized Official:  Philip Clendenin, AmSurg President

8      •  NPI Authorized Location:  Defendant Temecula Valley Endoscopy ASC,

9 LP d/b/a Temecula Valley Endoscopy Center.

10     •  General Partner:  USC Murrieta Holding GP, LLC, whose Manager is Clint

11 Cromwell (former AmSurg VP and Deputy General Counsel)

12    30. Defendant The Escondido CA Endoscopy ASC, LP d/b/a Parkway Endoscopy

13 Center is a "for profit" Tennessee limited partnership with its principal place of business listed as

14 AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the

15 following information:

16     •  NPI Authorized Official:  Philip Clendenin, AmSurg President

17     •  NPI Practice Location:  488 East Valley Parkway, Escondido, California

18     •  General Partner:  AmSurg Escondido CA, Inc. (a Tennessee corporation

19 whose President is Phillip Clendenin—the AmSurg President)

20    31. Defendant Escondido Anesthesia Associates, LP is a "for profit" Tennessee

21 limited partnership with its principal place of business listed as AmSurg's Nashville, Tennessee

22 address.  Its application for an NPI necessarily included the following information:

23     •  NPI Authorized Official:  Alina Logan, AmSurg VP – Revenue

24 Management

25     •  NPI Practice Location:  Defendant The Escondido CA Endoscopy ASC, LP

26 d/b/a Parkway Endoscopy Center

27     •  General Partner:  AmSurg Escondido CA, Inc. (a Tennessee corporation

28 whose President is Phillip Clendenin—the AmSurg President)

32.    Defendant The San Luis Obispo CA Endoscopy ASC, LP d/b/a Endoscopy Center of the Central Coast is a "for profit" Tennessee limited partnership with its principal place of business listed as AmSurg Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Philip Clendenin, AmSurg President
- NPI Practice Location:  77 Casa Street, Suite 106, San Luis Obispo, California
- General Partner:  AmSurg San Luis Obispo CA, Inc. (a Tennessee corporation whose President is Phillip Clendenin—the AmSurg President)

33.    Defendant AmSurg San Luis Obispo Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Philip Clendenin, AmSurg President
- NPI Practice Location:  Defendant The San Luis Obispo CA Endoscopy ASC, LP d/b/a Endoscopy Center of the Central Coast
- General Partner:  AmSurg San Luis Obispo CA, Inc. (a Tennessee corporation whose President is Phillip Clendenin—the AmSurg President)

34.    Defendant Marin Endoscopy Center, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Philip Clendenin, AmSurg President
- NPI Practice Location:  1100 South Eliseo Drive, Suite 3, Greenbrae, California
- Manager:  Phillip Clendenin, AmSurg President

35.    Defendant AmSurg Marin Anesthesia, LP is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1          • NPI Practice Location:  Defendant Marin Endoscopy Center, LLC

2          • General Partner:  AmSurg Holdings, Inc. whose Vice President is Clint

3   Cromwell (former AmSurg VP and Deputy General Counsel)

4          36.     Defendant The La Jolla Endoscopy Center, LP is a "for profit" Tennessee limited

5   liability company with its principal place of business listed as AmSurg Nashville, Tennessee

6   address.  Its application for an NPI necessarily included the following information:

7          • NPI Authorized Official:  Phillip Clendenin, AmSurg President

8          • NPI Practice Location:  9850 Genesee Avenue, La Jolla, California

9          • General Partner:  AmSurg La Jolla, Inc. (a Tennessee corporation whose

10  President is Phillip Clendenin—the AmSurg President)

11         37.     Defendant La Jolla Anesthesia Associates, LP is a "for profit" Tennessee limited

12  liability company with its principal place of business listed as AmSurg's Nashville, Tennessee

13  address.  Its application for an NPI necessarily included the following information:

14         • NPI Authorized Official:  Phillip Clendenin, AmSurg President

15         • NPI Practice Location:  Defendant The La Jolla Endoscopy Center, LP

16         • General Partner:  La Jolla Holding GP, LLC (a Tennessee limited liability

17  company whose member is La Jolla Endoscopy Center, LP)

18         38.     Defendant The Oakland CA Endoscopy ASC, LP d/b/a East Bay Endosurgery

19  Center is a "for profit" Tennessee limited liability company with its principal place of business

20  listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included

21  the following information:

22         • NPI Authorized Official:  Phillip Clendenin, AmSurg President

23         • NPI Practice Location:  300 Frank Ogawa Plaza, Oakland, California

24         • General Partner:  AmSurg Oakland CA, Inc. (a Tennessee corporation

25  whose President is Phillip Clendenin—the AmSurg President)

26         39.     Defendant AmSurg Oakland Anesthesia, LP is a "for profit" Tennessee limited

27  liability company with its principal place of business listed as AmSurg's Nashville, Tennessee

28  address.  Its application for an NPI necessarily included the following information:

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1            •       NPI Authorized Official:  Phillip Clendenin, AmSurg President

2            •       NPI Practice Location:  Defendant The Oakland CA Endoscopy ASC, LP

3   d/b/a East Bay Endosurgery Center

4            •       General Partner:  AmSurg Oakland CA, Inc. (a Tennessee corporation

5   whose President is Phillip Clendenin—the AmSurg President)

6       40.     Defendant Gastroenterology Associates Endoscopy Center, LLC d/b/a Redding

7   Endoscopy Center is a "for profit" Tennessee limited liability company with its principal place of

8   business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily

9   included the following information:

10           •       NPI Authorized Official:  Phillip Clendenin, AmSurg President

11           •       NPI Practice Location:  2179 Court Street, Redding, California

12           •       Members and Owners:  AmSurg Holdings, Inc. and Redding

13   Gastroenterology LLC, a "for profit" Tennessee limited liability company (whose

14   manager/members are Bret Nicholas Namihas, MD, G. Naresh Reddy, MD, and Piyush K.

15   Dhanuka, MD)

16       41.     Defendant Redding Anesthesia Associates, LP is a "for profit" Tennessee limited

17   liability company with its principal place of business listed as AmSurg's Nashville, Tennessee

18   address.  Its application for an NPI necessarily included the following information:

19           •       NPI Authorized Official:  Phillip Clendenin, AmSurg President

20           •       NPI Practice Location:  Defendant Gastroenterology Associates Endoscopy

21   Center, LLC dba Redding Endoscopy Center

22           •       General Partner:  Defendant Gastroenterology Associates Endoscopy

23   Center, LLC d/b/a Redding Endoscopy Center (whose Vice President is Justin Page, the current

24   VP and Deputy General Counsel of AmSurg)

25       42.     Defendant The Glendora CA Endoscopy ASC, LP d/b/a Glendora Digestive

26   Disease Institute is a "for profit" Tennessee limited liability company with its principal place of

27   business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily

28   included the following information:

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1          •        NPI Authorized Official:  Phillip Clendenin, AmSurg President

2          •        NPI Practice Location:  1794 South Barranca Avenue, Glendora, California

3          •        General Partner:  AmSurg Glendora CA, Inc. (a Tennessee corporation

4   whose President is Phillip Clendenin—the AmSurg President)

5          43.     Defendant Glendora Anesthesia Associates, LP is a "for profit" Tennessee limited

6   liability company with its principal place of business listed as AmSurg's Nashville, Tennessee

7   address.  Its application for an NPI necessarily included the following information:

8          •        NPI Authorized Official:  Phillip Clendenin, AmSurg President

9          •        NPI Practice Location:  Defendant Glendora CA Endoscopy ASC, LP

10         •        General Partner:  Gastroenterology Associates Endoscopy Center, LLC, a

11  "for profit" Tennessee limited liability company whose members are AmSurg Holdings, Inc.

12  (whose Vice President is Clint Cromwell, former VP and Deputy General Counsel of AmSurg)

13  and Redding Gastroenterology LLC, a "for profit" Tennessee limited liability company (whose

14  managers/members are Bret Nicholas Namihas, M.D., G. Naresh Reddy, M.D., and Piyush K.

15  Dhanuka, M.D.)

16         44.     Defendant Folsom Endoscopy Center, LLC d/b/a Folsom Sierra Endoscopy Center

17  is a "for profit" Delaware limited liability company with its principal place of business listed as

18  AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the

19  following information:

20         •        NPI Authorized Official:  Phillip Clendenin, AmSurg President

21         •        NPI Practice Location:  1671 Creekside Drive, Suite 100, Folsom,

22  California

23         •        Members and Owners:  Deborah Miller (AmSurg Division VP –

24  Operations), Barbara Hanania (AmSurg Division President – Operations), Nazir Rahm, M.D.,

25  Kanat Ransibrahmanakul, M.D., and Drew Ingram, M.D.

26         45.     Defendant Folsom Anesthesia Associates, LP, a "for profit" Tennessee limited

27  partnership with its principal place of business listed as AmSurg's Nashville, Tennessee address.

28  Its application for an NPI necessarily included the following information:

1          •          NPI Authorized Official:  Alina Logan, AmSurg VP – Revenue

2    Management

3          •          NPI Practice Location:  Defendant Folsom Endoscopy Center, LLC dba

4    Folsom Sierra Endoscopy Center

5          •          General Partner:  Folsom Anesthesia Holding GP, LLC (a Tennessee

6    limited liability company whose Vice President is Clint Cromwell, former VP and Deputy

7    General Counsel for AmSurg)

8          46.          Defendant Northside Gastroenterology Endoscopy Center, LLC is a "for profit"

9    Indiana limited liability company with its principal place of business listed as AmSurg's

10   Nashville, Tennessee address.  Its application for an NPI necessarily included the following

11   information:

12         •          NPI Authorized Official:  Phillip Clendenin, AmSurg President

13         •          NPI Practice Location:  8424 Naab Road, Suite 3-G, Indianapolis, Indiana

14         •          Members:  AmSurg Holdings, LLC and RRDF, LLC

15         47.          Defendant AmSurg Indianapolis Anesthesia, LLC is a "for profit" Tennessee

16   limited liability company with its principal place of business listed as AmSurg's Nashville,

17   Tennessee address.  Its application for an NPI necessarily included the following information:

18         •          NPI Authorized Official:  Phillip Clendenin, AmSurg President

19         •          NPI Practice Location:  Defendant Northside Gastroenterology Endoscopy

20   Center, LLC

21         •          Member:  Defendant Northside Gastroenterology Endoscopy Center, LLC

22         48.          Defendant Oak Lawn IL Endoscopy ASC, LLC d/b/a Oak Lawn Endoscopy

23   Center, is a "for profit" Tennessee limited liability company with its principal place of business

24   listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included

25   the following information:

26         •          NPI Authorized Official:  Thomas Arndt, M.D., Physician at Defendant

27   Oak Lawn IL Endoscopy ASC, LLC

28         •          NPI Practice Location: 9921 Southwest Highway, Oak Lawn, Illinois

- 14 -

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1         •      Members and Owners:  Defendant AmSurg Holdings, Inc. and ASC

2 Physician Owners Karmran Ayub, M.D., Charles Berkelhammer, M.D., Brian Blumenstein,

3 M.D., Douglas Lee, M.D., Wayne Lue, M.D., Mihir Majmunder, M.D., Vincent Muscarello,

4 M.D., Samir Patel, M.D., Jeffrey Port, M.D., and Thomas Arndt, M.D., all of whom (with the

5 exception of Dr. Majmunder) are board-certified gastroenterologists

6       49.     Defendant AmSurg Oak Lawn IL Anesthesia, LLC is a "for profit" Tennessee

7 limited liability company with its principal place of business listed as AmSurg's Nashville,

8 Tennessee address.  Its application for an NPI necessarily included the following information:

9         •      NPI Authorized Official:  Phillip Clendenin, AmSurg President

10         •      NPI Practice Location:  Defendant Tampa Bay Endoscopy Center, LLC

11         •      Managing Member:  AmSurg Holdings, Inc.

12       50.     Defendant The Lewes DE Endoscopy ASC LLC d/b/a Seaside Endoscopy Pavilion

13 is a "for profit" Tennessee limited liability company with its principal place of business listed as

14 AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the

15 following information:

16         •      NPI Authorized Official:  Phillip Clendenin, AmSurg President

17         •      NPI Practice Location:  34444 King Street Row, Lewes, Delaware

18       51.     Defendant AmSurg Lewes Anesthesia, LLC is a "for profit" Tennessee limited

19 liability company with its principal place of business listed as AmSurg's Nashville Tennessee

20 address.  Its application for an NPI necessarily included the following information:

21         •      NPI Authorized Official:  Phillip Clendenin, AmSurg President

22         •      NPI Practice Location:  Defendant The Lewes DE Endoscopy ASC LLC

23       52.     Defendant MDSine, LLC d/b/a Surgery Center of New England is a "for profit"

24 Tennessee limited liability company with its principal place of business listed as AmSurg's

25 Nashville, Tennessee address.  Its application for an NPI necessarily included the following

26 information:

27         •      NPI Authorized Official:  Phillip Clendenin, AmSurg President

28         •      NPI Practice Location: 55 St. George Road, Springfield, Massachusetts

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

- • Members and Owners:  AmSurg Holdings, Inc., Larry Litscher, M.D., Brian Bredvik, M.D., Steven Covici, M.D., Nathalie Rioux, M.D., Richard Anderson, M.D., Kamal Kalia, M.D., Philip Moratis, M.D., Michael Woods, M.D., David Bowers, D.O., Paul Azimov, M.D., Claude Borowsky, M.D., Scott Cooper, M.D., Brett Hynninen, M.D.,  Greg Park, M.D., Robert Berger, M.D., Charles Mick, M.D., Eric Munier, M.D., Tammy Black, M.D., Sarit Patel, M.D., Steve Berger, M.D., and Jim Rosenthal, M.D.

53. Defendant AmSurg MDSINE Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Phillip Clendenin, AmSurg President
- • NPI Practice Location:  Defendant MDSine, LLC
- • Managing Member:  Defendant AmSurg Holdings, Inc.

54. Defendant Northeast Endoscopy Center, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Ken Camerota, CEO at Northeast Endoscopy Center, LLC
- • NPI Practice Location:  59 Lowes Way, Lowell, Massachusetts

55. Defendant Lowell Anesthesia Associates, PLLC is a "for profit" Tennessee professional limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Phillip Clendenin, AmSurg President
- • NPI Practice Location:  Defendant Northeast Endoscopy Center, LLC
- • Members and Owners:  Richard Tilson, M.D. and Geetanjali Akerkar, M.D., both of whom are gastroenterologists.

56. Defendant Pioneer Valley Surgicenter, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

- • NPI Authorized Official:  Phillip Clendenin, AmSurg President
- • NPI Practice Location:  3550 Main Street, Suite 103, Springfield, Massachusetts
- • Managing Member:  Defendant AmSurg Holdings, Inc.

57.     Defendant Pioneer Sedation, PLLC is a "for profit" Tennessee professional limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address. Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Alina Logan, AmSurg VP – Revenue Management
- • NPI Practice Location:  Defendant Pioneer Valley Surgicenter, LLC

58.     Defendant Diagnostic Endoscopy, LLC d/b/a Diagnostic Endoscopy Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Phillip Clendenin, AmSurg President
- • NPI Practice Location:  778 Long Ridge Road, Stamford, Connecticut
- • Members and Owners:  Defendant AmSurg Holdings, Inc. and various ASC Physician Owners, including Stuart Waldstreicher, M.D., Peter Gardner, M.D., and Felice Zwas, M.D., all three of whom are board-certified gastroenterologists

59.     Defendant AmSurg Stamford Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Phillip Clendenin, AmSurg President
- • NPI Practice Location:  Defendant Diagnostic Endoscopy, LLC
- • Member:  Defendant Diagnostic Endoscopy, LLC

60.     Defendant Connecticut Eye Surgery Center South, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

1         •    NPI Authorized Official:  Phillip Clendenin, AmSurg President

2         •    NPI Practice Location:  60 Wellington Road, Milford, Connecticut

3         •    Managing Member:  Defendant AmSurg Holdings, Inc.

4     61.    Defendant Connecticut Eye Anesthesia, LLC is a "for profit" Tennessee limited

5 liability company with its principal place of business listed as AmSurg's Nashville Tennessee

6 address.  Its application for an NPI necessarily included the following information:

7         •    NPI Authorized Official:  Phillip Clendenin, AmSurg President

8         •    NPI Practice Location:  Defendant Connecticut Eye Surgery Center South,

9 LLC

10         •    Managing Member:  Defendant AmSurg Holdings, Inc.

11     62.    The Altamonte Springs FL Endoscopy ASC LLC d/b/a Palm Endoscopy Center,

12 LLC is a "for profit" Tennessee limited liability company with its principal place of business

13 listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included

14 the following information:

15         •    NPI Authorized Official:  Phillip Clendenin, AmSurg President

16         •    NPI Practice Location:  623 Maitland Avenue, Suite 1100, Altamonte

17 Springs, Florida

18         •    Members and Owners:  AmSurg Altamonte Springs FL, Inc., a Tennessee

19 corporation with its principal place of business listed as AmSurg's Nashville, Tennessee address,

20 and Palm Endoscopy Center Inc., a Florida corporation that included as directors various ASC

21 Physician Owners, including Richard Straker, M.D., Barry R. Katz, M.D., Harry Shephard M.D.,

22 Raaj Popli M.D., Sanjay Reddy, M.D., and David Lebioda, M.D., all of whom (with the

23 exception of Dr. Popli) are board-certified gastroenterologists

24     63.    Defendant AmSurg Altamonte Springs Anesthesia, LLC is a "for profit"

25 Tennessee limited liability company with its principal place of business listed as AmSurg's

26 Nashville Tennessee address.  Its application for an NPI necessarily included the following

27 information:

28         •    NPI Authorized Official:  Phillip Clendenin, AmSurg President

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

- NPI Practice Location:  Defendant Altamonte Springs FL Endoscopy ASC LLC

- Member:  Defendant Altamonte Springs FL Endoscopy ASC LLC

64.    Defendant The Melbourne ASC, LP d/b/a The Surgery Center of Melbourne is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

- NPI Practice Location:  1401 South Apollo Blvd, Suite B, Melbourne, Florida

- General Partner:  AmSurg Melbourne, Inc., whose President is Phillip Clendenin (AmSurg President) and Secretary is Craig Wilson (Envision General Counsel and former AmSurg Senior VP and General Counsel)

65.    Defendant AmSurg Melbourne Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

- NPI Practice Location:  Defendant Melbourne ASC, LP

- Member:  Defendant Melbourne ASC, LP

66.    Defendant The Ocala Endoscopy ASC, LP d/b/a Endoscopy Center of Ocala is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

- NPI Practice Location:  1160 Southeast 18th Place, Ocala, Florida

- General Partner:  AmSurg Ocala, Inc., whose President is Phillip Clendenin (AmSurg President) and Secretary is Craig Wilson (Envision General Counsel and former AmSurg Senior VP and General Counsel)

67.     Defendant Anesthesia Associates of Ocala, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Ocala Endoscopy ASC, LP
- Member:  Defendant The Ocala Endoscopy ASC, LP

68.     Defendant The Orlando FL Endoscopy ASC, LLC d/b/a Citrus Ambulatory Surgery Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  2861 South Delaney Avenue, Suite B, Orlando, Florida
- Members and Owners:  Defendant AmSurg Holdings, Inc., Central Florida Surgical Center Partners LLP, Citrus Ambulatory Surgery Center, Inc. (including Avanish Aggarwal, M.D., Robert T. Baker, M.D., Steven L. Brint, M.D., C. Raymond Cottrell, M.D., Kenneth R. Feuer, M.D., and Alex Menendez, M.D., all of whom are gastroenterologists)

69.     Defendant AmSurg Citrus Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant The Orlando FL Endoscopy ASC, LLC d/b/a Citrus Ambulatory Surgery Center
- Members and Owners:  Defendant AmSurg Holdings, Inc., Central Florida Surgical Center Partners LLP, Citrus Ambulatory Surgery Center, Inc. (including Avanish Aggarwal, M.D., Robert T. Baker, M.D., Steven L. Brint, M.D., C. Raymond Cottrell, M.D., Kenneth R. Feuer, M.D., and Alex Menendez, M.D., all of whom are gastroenterologists)

70.     Defendant Orlando/Mills FL Endoscopy ASC, LLC d/b/a Center for Digestive Endoscopy is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  1817 North Mills Avenue, Orlando, Florida
- Members and Owners:  Defendant AmSurg Holdings, Inc. and Center for Digestive Endoscopy, Inc.

71.     Defendant Orlando Mills Anesthesia Associates, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Orlando/Mills FL Endoscopy ASC, LLC

72.     Defendant Surgery Center of Volusia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  3635 South Clyde Morris Boulevard, Suite 500, Port Orange, Florida
- Managing Member:  Defendant AmSurg Holdings, Inc.

73.     Defendant AmSurg Port Orange Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Surgery Center of Volusia, LLC
- Principal Member:  Defendant Surgery Center of Volusia, LLC

74. Defendant Hillmoor Eye Surgery Center, LLC d/b/a One Day Surgery Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  1715 SE Tiffany Avenue, Port St. Lucie, Florida
- Managing Member:  Defendant AmSurg Holdings, Inc.

75. Defendant AmSurg Port St. Lucie Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Hillmoor Eye Surgery Center, LLC

76. Defendant The Rockledge FL Endoscopy ASC, LLC d/b/a Space Coast Endoscopy Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  1974 Rockledge Blvd, Suite 102, Rockledge, Florida
- Members and Owners:  Defendant AmSurg Holdings, Inc. and Brevard GI Associates, LLC (whose members are Francisco Seara Aguilo, M.D., Andrew I. Tobkes, M.D., Rex L. Gomez, M.D., William Rylander, M.D., Murali Krishna, M.D., and Justin Gomez, M.D., all of whom are gastroenterologists)

77. Defendant AmSurg Rockledge FL Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Rockledge FL Endoscopy ASC, LLC

- • Members and Owners:  Defendant AmSurg Holdings, Inc. and Anesthesia Professional Services of Brevard, LLC 1 (whose members are Murali Krishna, M.D. and Andrew I. Tobkes, M.D., both of whom are gastroenterologists)

78. Defendant The Tampa FL Endoscopy ASC, LLC d/b/a Tampa Bay Endoscopy Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Phillip Clendenin, AmSurg President
- • NPI Practice Location:  4809 North Armenia Avenue, Tampa, Florida
- • Members and Owners:  Defendant AmSurg Holdings, Inc. and Endoscopy Associates of Tampa Bay, LLC (whose members are Leo Grauer, M.D., Bruce Edgerton, M.D., Israel Crespo, M.D., Angel Rosario, M.D., Ashwin Mehta, M.D., John Delgado, M.D., Luis Lopez, M.D., Emmanuel Mompi, M.D., Eugene Ward, M.D., Alan Weintraub, M.D., Amir T. Awad, M.D., John Chang, M.D., and Alfredo Mendoza, M.D., all of whom are gastroenterologists)

79. Defendant AmSurg Tampa Bay Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- • NPI Authorized Official:  Phillip Clendenin, AmSurg President
- • NPI Practice Location:  4809 North Armenia Ave, Suite 100, Tampa, Florida
- • Members and Owners:  Defendant AmSurg Holdings, Inc. and Endoscopy Associates of Tampa Bay, LLC (whose members are Leo Grauer, M.D., Bruce Edgerton, M.D., Israel Crespo, M.D., Angel Rosario, M.D., Ashwin Mehta, M.D., John Delgado, M.D., Luis Lopez, M.D., Emmanuel Mompi, M.D., Eugene Ward, M.D., Alan Weintraub, M.D., Amir T. Awad, M.D., John Chang, M.D., and Alfredo Mendoza, M.D., all of whom are gastroenterologists)

80.    Defendant The Westglen Endoscopy Center, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  16663 Midland Drive, Suite 200, Shawnee, Kansas

81.    Defendant Eye Centers of Louisville, PSC d/b/a Bluegrass Surgery and Laser Center is a Kentucky professional services corporation with its principal place of business listed as 1935 Bluegrass Avenue, Suite 200, Louisville, Kentucky.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Christopher A. Holden, Envision President and CEO
- NPI Practice Location:  1400 Poplar Level Road, Louisville, Kentucky
- Owners:  Defendant AmSurg Holdings, Inc. and Inder P. Singal, M.D., Steven M. Bloom, M.D., Lawrence R. Tenkman, M.D.; and its director is Donald W Bennett, M.D.

82.    Defendant Louisville Eye Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Alina Logan, AmSurg VP – Revenue Management
- NPI Practice Location:  Defendant Eye Centers of Louisville, PSC d/b/a Bluegrass Surgery and Laser Center
- Member:  AmSurg Kentucky Ophthalmology, LLC (whose owners are Defendant AmSurg Holdings, Inc. and Killer Bees, LLC—whose sole member is Inder P. Singal, M.D., an ophthalmologist)

83.    Defendant Eastern Shore Endoscopy, LLC is a Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

1 • NPI Authorized Official:  Michael Fisher, Physician at Defendant Eastern
2 Shore Endoscopy, LLC

3 • NPI Practice Location:  511 Idlewild Avenue, Easton, Maryland

4 84. Defendant Easton Anesthesia Association, LLC is a "for profit" Tennessee limited
5 liability company with its principal place of business listed as AmSurg's Nashville Tennessee
6 address.  Its application for an NPI necessarily included the following information:

7 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

8 • NPI Practice Location:  Defendant Eastern Shore Endoscopy, LLC

9 85. Defendant Maryland Endoscopy Center, LLC is a "for profit" Maryland limited
10 liability company with its principal place of business listed as AmSurg's Nashville, Tennessee
11 address.  Its application for an NPI necessarily included the following information:

12 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

13 • NPI Practice Location:  100 West Road, Suite 115, Towson, Maryland

14 86. Defendant Maryland Endoscopy Anesthesia, LLC is a "for profit" Tennessee
15 limited liability company with its principal place of business listed as AmSurg's Nashville
16 Tennessee address.  Its application for an NPI necessarily included the following information:

17 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

18 • NPI Practice Location:  Defendant Maryland Endoscopy Center, LLC

19 87. Defendant Carroll County Digestive Disease Center, LLC is a "for profit"
20 Tennessee limited liability company with its principal place of business listed as AmSurg's
21 Nashville Tennessee address.  Its application for an NPI necessarily included the following
22 information:

23 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

24 • NPI Practice Location:  216 Washington Heights Medical Center, Suite B,
25 Westminster, Maryland

26 88. Defendant AmSurg Westminster Anesthesia, LLC is a "for profit" Tennessee
27 limited liability company with its principal place of business listed as AmSurg's Nashville
28 Tennessee address.  Its application for an NPI necessarily included the following information:

1 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

2 • NPI Practice Location:  Defendant Carroll County Digestive Disease

3 Center, LLC

4 89. Defendant 32nd Street Surgery Center, LLC is a "for profit" Tennessee limited

5 liability company with its principal place of business listed as 1531 East 32nd Street, Joplin,

6 Missouri.  Its application for an NPI necessarily included the following information:

7 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

8 • NPI Practice Location:  1531 East 32nd Street, Suite 6, Joplin, Missouri

9 90. Defendant Anesthesia Associates of Joplin, LLC is a "for profit" Tennessee

10 limited liability company with its principal place of business listed as AmSurg's Nashville

11 Tennessee address.  Its application for an NPI necessarily included the following information:

12 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

13 • NPI Practice Location:  Defendant 32nd Street Surgery Center, LLC

14 91. Defendant The Greensboro NC Endoscopy ASC, LLC d/b/a Guilford Endoscopy

15 Center is a "for profit" Tennessee limited liability company with its principal place of business

16 listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included

17 the following information:

18 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

19 • NPI Practice Location:  593 Yanceyville Street, Suite 100, Greensboro,

20 North Carolina

21 92. Defendant AmSurg Greensboro Anesthesia, LLC is a "for profit" Tennessee

22 limited liability company with its principal place of business listed as AmSurg's Nashville

23 Tennessee address.  Its application for an NPI necessarily included the following information:

24 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

25 • NPI Practice Location:  Defendant NC Endoscopy ASC, LLC d/b/a

26 Guilford Endoscopy Center, LLC

27 93. Defendant The Cincinnati ASC, LLC d/b/a University Endoscopy Center is a "for

28 profit" Tennessee limited liability company with its principal place of business listed as

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1    AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the

2    following information:

3               • NPI Authorized Official:  Phillip Clendenin, AmSurg President

4               • NPI Practice Location:  9275 Montgomery Road, Suite 400, Cincinnati,

5    Ohio

6         94.    Defendant AmSurg Cincinnati Anesthesia, LLC is a "for profit" Tennessee limited

7    liability company with its principal place of business listed as AmSurg's Nashville Tennessee

8    address.  Its application for an NPI necessarily included the following information:

9               • NPI Authorized Official:  Phillip Clendenin, AmSurg President

10              • NPI Practice Location:  Defendant Cincinnati ASC, LLC d/b/a University

11   Endoscopy Center

12        95.    Defendant The Toledo Endoscopy ASC, LLC d/b/a Northwest Ohio Endoscopy

13   Center is a "for profit" Tennessee limited liability company with its principal place of business

14   listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included

15   the following information:

16              • NPI Authorized Official:  Billie Payne, AmSurg Senior VP – Operations

17              • NPI Practice Location:  4841 Monroe Street, Suite 111, Toledo, Ohio

18        96.    Defendant AmSurg Toledo Anesthesia, LLC is a "for profit" Tennessee limited

19   liability company with its principal place of business listed as AmSurg's Nashville Tennessee

20   address.  Its application for an NPI necessarily included the following information:

21              • NPI Authorized Official:  Phillip Clendenin, AmSurg President

22              • NPI Practice Location:  Defendant Toledo Endoscopy ASC, LLC

23        97.    Defendant The Willoughby ASC, LLC d/b/a CDH Endoscopy Center is a "for

24   profit" Tennessee limited liability company with its principal place of business listed as

25   AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the

26   following information:

27              • NPI Authorized Official:  Phillip Clendenin, AmSurg President

28              • NPI Practice Location:  34940 Ridge Road, Willoughby, Ohio

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

98.     Defendant AmSurg Willoughby Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant The Willoughby ASC, LLC

99.     Defendant The Oklahoma City ASC, LLC d/b/a The Endoscopy Center at Meridian is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  13313 North Meridian Avenue, Building B, Oklahoma City, Oklahoma

100.     Defendant The Tulsa OK Endoscopy ASC, LLC d/b/a Tulsa Endoscopy Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  4200 East Skelly Drive, Suite 100, Tulsa, Oklahoma

101.     Defendant Anesthesia Associates of Oklahoma, PLLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Paul Stanton, Physician at Tulsa OK Endoscopy ASC, LLC d/b/a Tulsa Endoscopy Center
- NPI Practice Location:  Defendant Tulsa OK Endoscopy ASC, LLC

102.     Defendant Cascade Endoscopy Center, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

1  • NPI Authorized Official:  Christopher Kelly, Former AmSurg General
2  Counsel

3  • NPI Practice Location:  1007 Harlow Road, Suite 110, Springfield, Oregon
4  • Members:  Defendant AmSurg Holdings, Inc. and Gateway Endoscopy
5  ASC, LLC (Members Harry H. Park, M.D., Sarah J. Brendler, M.D., Christopher F. Stanke,
6  M.D., all of whom are gastroenterologists)

7  103.  Defendant Springfield OR Anesthesia Associates, LLC is a "for profit" Tennessee
8  limited liability company with its principal place of business listed as AmSurg's Nashville,
9  Tennessee address.  Its application for an NPI necessarily included the following information:

10  • NPI Authorized Official:  Alina Logan, AmSurg VP – Revenue
11  Management

12  • NPI Practice Location:  Defendant Cascade Endoscopy Center, LLC
13  • Manager:  Craig A. Wilson (Envision General Counsel and former AmSurg
14  Senior VP and General Counsel)

15  104.  Defendant Surgical Specialty Center of Northeastern Pennsylvania, LLC is a "for
16  profit" Tennessee limited liability company with its principal place of business listed as
17  AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the
18  following information:

19  • NPI Authorized Official:  Julie Bingham, Business Manager for ASC
20  • NPI Practice Location:  190 Welles St, Forty Fort, Pennsylvania

21  105.  Defendant Forty Fort Anesthesia Associates, LLC is a "for profit" Tennessee
22  limited liability company with its principal place of business listed as AmSurg's Nashville,
23  Tennessee address.  Its application for an NPI necessarily included the following information:

24  • NPI Authorized Official:  Phillip Clendenin, AmSurg President
25  • NPI Practice Location:  Defendant Surgical Specialty Center of
26  Northeastern Pennsylvania, LLC

27  106.  Defendant The Pottsville PA Endoscopy ASC, LP d/b/a Schuylkill Endoscopy
28  Center is a "for profit" Tennessee limited partnership with its principal place of business listed as

FIRST AMENDED COMPLAINT
CASE NO.  2:19-CV-0873 TLN AC

1    AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the

2    following information:

3                    • NPI Authorized Official:  Phillip Clendenin, AmSurg President

4                    • NPI Practice Location:  48 Tunnel Rd, Suite 103, Pottsville, Pennsylvania

5          107.   Defendant West Chester Endoscopy, LLC is a "for profit" Tennessee limited

6    liability company with its principal place of business listed as 915 Old Fern Hill Road, Suite 300,

7    Building B, West Chester, Pennsylvania, but its mailing address is AmSurg's Nashville,

8    Tennessee address.  Its application for an NPI necessarily included the following information:

9                    • NPI Authorized Official:  Phillip Clendenin, AmSurg President

10                   • NPI Practice Location:  915 Old Fern Hill Rd Bldg B, Ste 300, West

11   Chester, Pennsylvania

12         108.   Defendant West Chester Anesthesia, LLC is a "for profit" Tennessee limited

13   liability company with its principal place of business listed as 915 Old Fern Hill Road, Suite 300,

14   Building B, West Chester, Pennsylvania, but its mailing address is AmSurg's Nashville,

15   Tennessee address. Its application for an NPI necessarily included the following information:

16                   • NPI Authorized Official:  Alina Logan, AmSurg VP – Revenue

17   Management

18                   • NPI Practice Location:  Defendant West Chester Endoscopy, LLC

19         109.   Defendant Mid-Atlantic Endoscopy, LLC d/b/a Mid-Atlantic Gastrointestinal

20   Center ("MAGIC") is a Pennsylvania limited liability company with its principal place of

21   business listed as 2104 Harrisburg Pike, Suite 300, Lancaster, Pennsylvania.  Its application for

22   an NPI necessarily included the following information:

23                   • NPI Authorized Official:  Phillip Clendenin, AmSurg President

24                   • NPI Practice Location:  2104 Harrisburg Pike, Suite 300, Lancaster,

25   Pennsylvania

26         110.   Defendant RGAL Anesthesia Services, LLC is a Pennsylvania limited liability

27   company with its principal place of business listed as 2104 Harrisburg Pike, Lancaster,

28   Pennsylvania.  Its application for an NPI necessarily included the following information:

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1               •       NPI Authorized Official:  Dale Whitebloom, ASC Physician

2 Gastroenterologist at MAGIC

3               •       NPI Practice Location:  Defendant MAGIC

4      111.    Defendant Mid-Atlantic Endoscopy, LLC d/b/a Mid-Atlantic Gastrointestinal

5 Center III ("MAGIC III") is a Pennsylvania limited liability company with its principal place of

6 business listed as 2112 Harrisburg Pike, Lancaster, Pennsylvania.  Its application for an NPI

7 necessarily included the following information:

8               •       NPI Authorized Official:  Phillip Clendenin, AmSurg President

9               •       NPI Practice Location:  2112 Harrisburg Pike, Suite 323, Lancaster,

10 Pennsylvania

11      112.    Defendant Professional Anesthesia Associates, LLC is a Pennsylvania limited

12 liability company with its principal place of business listed as 2112 Harrisburg Pike, Lancaster,

13 Pennsylvania.  Its application for an NPI necessarily included the following information:

14               •       NPI Authorized Official:  Paul Allegretti, ASC Physician

15 Gastroenterologist at MAGIC III

16               •       NPI Practice Location:  Defendant MAGIC III

17      113.    Defendant The Columbia ASC Northwest, LLC d/b/a Lake Murry Endoscopy

18 Center is a "for profit" Tennessee limited liability company with its principal place of business

19 listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included

20 the following information:

21               •       NPI Authorized Official:  Phillip Clendenin, AmSurg President

22               •       NPI Practice Location:  190 Parkridge Dr, Suite 100, Columbia, South

23 Carolina

24      114.    Defendant AmSurg Columbia Anesthesia, LLC is a "for profit" Tennessee limited

25 liability company with its principal place of business listed as AmSurg's Nashville, Tennessee

26 address.  Its application for an NPI necessarily included the following information:

27               •       NPI Authorized Official:  Phillip Clendenin, AmSurg President

28

1 • NPI Practice Location:  Defendant The Colombia ASC Northwest, LLC

2 d/b/a Lake Murry Endoscopy Center

3      115.    Defendant The Greenville ASC, LLC d/b/a Endoscopy Center of the Upstate is a

4 "for profit" Tennessee limited liability company.  Its application for an NPI necessarily included

5 the following information:

6 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

7 • NPI Practice Location:  14 Hawthorne Park Court, Greenville, South

8 Carolina

9      116.    Defendant AmSurg Greenville Anesthesia, LLC is a "for profit" Tennessee limited

10 liability company with its principal place of business listed as AmSurg's Nashville, Tennessee

11 address.  Its application for an NPI necessarily included the following information:

12 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

13 • NPI Practice Location:  Defendant The Greenville ASC, LLC

14      117.    Defendant The Chattanooga Endoscopy ASC, LLC d/b/a Chattanooga Endoscopy

15 Center is a "for profit" Tennessee limited liability company with its principal place of business

16 listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included

17 the following information:

18 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

19 • NPI Practice Location:  1501 Riverside Drive, Suite 117, Chattanooga,

20 Tennessee

21      118.    Defendant AmSurg Chattanooga Anesthesia, LLC is a "for profit" Tennessee

22 limited liability company with its principal place of business as AmSurg's Nashville, Tennessee

23 address.  Its application for an NPI necessarily included the following information:

24 • NPI Authorized Official:  Phillip Clendenin, AmSurg President

25 • NPI Practice Location:  Defendant Chattanooga Endoscopy Center, LLC

26 d/b/a Chattanooga Endoscopy Center

27      119.    Defendant The Columbia TN Endoscopy ASC, LLC d/b/a Mid-South Endoscopy

28 Center is a "for profit" Tennessee limited liability company with its principal place of business

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1   listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included

2   the following information:

3        • NPI Authorized Official:  Phillip Clendenin, AmSurg President

4        • NPI Practice Location:  1510 1/2 Hatcher Lane Columbia, Tennessee

5        120.   Defendant Anesthesia Associates of Columbia TN, LLC is a "for profit"

6   Tennessee limited liability company with its principal place of business as AmSurg's Nashville,

7   Tennessee address.  Its application for an NPI necessarily included the following information:

8        • NPI Authorized Official:  Phillip Clendenin, AmSurg President

9        • NPI Practice Location:  Defendant Columbia TN Endoscopy ASC, LLC

10       121.   Defendant Hermitage TN Endoscopy ASC, LLC d/b/a Associates Endoscopy is a

11  "for profit" Tennessee limited liability company with its principal place of business listed as

12  AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the

13  following information:

14       • NPI Authorized Official:  Phillip Clendenin, AmSurg President

15       • NPI Practice Location:  5653 Frist Blvd, Suite 532, Hermitage, Tennessee

16       122.   Defendant AmSurg Hermitage Anesthesia, LLC is a "for profit" Tennessee limited

17  liability company with its principal place of business as AmSurg's Nashville, Tennessee address.

18  Its application for an NPI necessarily included the following information:

19       • NPI Authorized Official:  Phillip Clendenin, AmSurg President

20       • NPI Practice Location:  Defendant Hermitage TN Endoscopy ASC, LLC

21  d/b/a Associates Endoscopy

22       123.   Defendant Kingsport TN Ophthalmology ASC, LLC d/b/a The Regional Eye

23  Surgery Center is a "for profit" Tennessee limited liability company with its principal place of

24  business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily

25  included the following information:

26       • NPI Authorized Official:  Phillip Clendenin, AmSurg President

27       • NPI Practice Location:  999 Executive Park Blvd, Suite 100, Kingsport,

28  Tennessee

124.    Defendant Kingsport Anesthesia Associates, LLC is a "for profit" Tennessee limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Kingsport TN Ophthalmology ASC, LLC

125.    Defendant Abilene Endoscopy Center, LP d/b/a The Abilene Endosocpy Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  1249 Ambler Avenue, Suite 100, Abilene, Texas

126.    Defendant AmSurg Abilene Anesthesia, LLC is a "for profit" Tennessee limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Abilene Endoscopy Center, LP

127.    Defendant Central Texas Endoscopy Center, LLC is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  2206 East Villa Maria Road, Bryan, Texas

128.    Defendant Anesthesia Associates of Bryan, LLC is a "for profit" Tennessee limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President
- NPI Practice Location:  Defendant Central Texas Endoscopy Center, LLC

129.    Defendant The El Paso ASC, LP d/b/a Endoscopy Center of El Paso is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

- NPI Practice Location:  1300 Murchison Dr, Suite 180, El Paso, Texas

130.    Defendant El Paso Anesthesia Associates, LLC is a "for profit" Tennessee limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address. Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

- NPI Practice Location:  Defendant Central Texas Endoscopy Center, LLC d/b/a Endoscpy Center of El Paso

131.    Defendant Shenandoah TX Endoscopy ASC, LLC d/b/a Woodlands Endoscopy Center is a "for profit" Tennessee limited liability company with its principal place of business listed as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Phillip Clendenin, AmSurg President

- NPI Practice Location:  111 Vision Park Blvd, Suite 160, Woodlands, Texas

132.    Defendant Woodlands Anesthesia Associates, LLC is a "for profit" Tennessee limited liability company with its principal place of business as AmSurg's Nashville, Tennessee address.  Its application for an NPI necessarily included the following information:

- NPI Authorized Official:  Alina Logan, AmSurg VP – Revenue Management

- NPI Practice Location:  Defendant Shenandoah TX Endoscopy ASC, LLC

133.    Discovery will likely reveal additional AmSurg ASCs using this same model, and whose claims to government health insurance programs are therefore false or fraudulent for the reasons set out below.  Moreover, to the extent any AmSurg ASCs contract directly with

anesthesia professionals under the same essential terms set out below (meaning, without working through an intermediary AmSurg Anesthesia Company), the resulting payments and sharing of fees would constitute illegal remuneration for precisely the same reasons.

## REGULATORY BACKGROUND

### A.     Medicare Coverage of ASC and Professional Services

134.    This action involves claims for ASC facility fees and professional surgery fees and anesthesia services fees for ASC patients under Part B of the Medicare program, a voluntary supplemental insurance program covering certain outpatient services.  *See* 42 U.S.C. §§ 1395j, 1395w-4.

135.    Medicare Part B covers specified surgical procedures (including endoscopies and colonoscopies) performed in Medicare-certified ASCs which are distinct entities that operate exclusively to furnish outpatient surgical services to patients who need no hospitalization and for whom the expected duration of services is less than 24 hours following admission.  Medicare ASCs receive payment for facility services that are packaged into an ASC payment (*e.g.*, nursing, technician, and related services, use of the facility, and administrative, recordkeeping, and housekeeping items and services) and for specified ancillary items and services that are integral to a covered surgical procedure and for which separate payment is allowed.  *See* 42 C.F.R. §§ 416.163, 416.164, 1001.952(r); Medicare Claims Processing Manual ("MCPM"), Pub. No. 100-04, Ch. 14, § 10.

136.    Medicare Part B separately covers and reimburses the professional services of the physicians who perform the outpatient surgical procedure for ASC patients and the physicians or CRNAs who provide anesthesia services for them.  *See* 42 C.F.R. § 416.163(b) and (c); MCPM, Ch. 14, § 10.

137.    Medicare Part B therefore usually pays three claims when a beneficiary has a covered surgical procedure performed at a Medicare-certified ASC: the ASC's claim for facility services, the physician's claim for professional surgery services, and the anesthetist's claim for professional anesthesia services.

138.    In order to receive payments from Medicare, each Medicare-certified AmSurg ASC executed a Medicare enrollment agreement (Form CMS-855B) that included the following express certifications:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to this supplier.  The Medicare laws, regulations, and program instructions are available through the Medicare contractor.  I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations, and program instructions (including, but not limited to, the Federal anti-kickback statute and the Stark law), and on the supplier's compliance with all applicable conditions of participation in Medicare.

139.    In order to receive payments from Medicare, each physician performing surgeries and each anesthetist providing anesthesia services at AmSurg ASCs executed a Medicare enrollment agreement (Form CMS-855) that includes the following express certifications:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in section 4A of this application.  The Medicare laws, regulations, and program instructions are available through the Medicare Administrative Contractor.  I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions (including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b) (section 1128B(b) of the Social Security Act) and the Physician Self-Referral Law (Stark Law), 42 U.S.C. section 1395nn (section 1877 of the Social Security Act)).

140.    In order to receive payments from Medicare, the AmSurg ASCs, AmSurg Anesthesia Companies, and ASC Physician Owners submitted their claims to Medicare Administrative Contractors on a standard claim form (Form CMS-1500) that includes the following express certification applicable to Medicare claims:

> In submitting this claim for payment from federal funds, I certify that: 1) the information on this form is true, accurate and complete; 2) I have familiarized myself with all applicable laws, regulations, and program instructions, which are available from the Medicare contractor; 3) I have provided or will provide sufficient information required to allow the government to make an informed eligibility and payment decision; 4) this claim, whether submitted by me or on my behalf by my designated billing company, complies with all applicable Medicare and/or Medicaid laws, regulations, and program instructions for payment including but not limited to the Federal anti-kickback statute and Physician Self-Referral law (commonly known as Stark law); 5) the services on this form were medically necessary and personally furnished by me or were furnished incident to my professional service by my employee under my direct supervision, except as otherwise expressly permitted by Medicare or TRICARE.

**B.     TRICARE Coverage of ASC and Professional Services**

141.     This action also involves claims for ASC facility fees and professional surgery fees and anesthesia services fees for ASC patients under TRICARE, a federal healthcare program that provides civilian health insurance to U.S. military members, retirees and their dependents.

142.     TRICARE covers specified surgical procedures (including endoscopies and colonoscopies) performed in certified ASCs that are Medicare-certified or meet other accreditation requirements.  *See* TRICARE Policy Manual 6010.60-M, Ch. 11, § 6.2.  TRICARE ASCs receive payment for facility services that are packaged into an ASC payment, including nursing, technician, and related services and supplies, use of the facility, and administrative, recordkeeping, and housekeeping items and services.  *See* TRICARE Reimbursement Manual 6010.61-M ("TRM"), Ch. 1, § 9.

143.     TRICARE separately covers and reimburses the professional services of the physicians who perform the outpatient surgical procedure for ASC patients and the physicians or CRNAs who provide anesthesia services for them.  *See* ("TRM"), Ch. 1, § 9.

144.     Like Medicare, TRICARE therefore usually pays three claims when a beneficiary has a covered surgical procedure performed at a TRICARE-certified ASC: the ASC's claim for facility services, the physician's claim for professional surgery services, and the anesthetist's claim for professional anesthesia services.

145.     In order to receive payments from TRICARE, the AmSurg ASCs submitted their claims for facility services to TRICARE contractors on a standard institutional claim form (Form CMS-1450 or UB-04) that includes the following express certifications:

> Submission of this claim constitutes certification that the billing information as shown on the face hereof is true, accurate and complete.  That the submitter did not knowingly or recklessly disregard or misrepresent or conceal material facts.
>
> . . .
>
> For TRICARE Purposes: (a) The information on the face of this claim is true, accurate and complete to the best of the submitter's knowledge and belief, and services were medically and appropriate for the health of the patient.

146.     In order to receive payments from TRICARE, the AmSurg Anesthesia Companies and the ASC Physician Owners submitted their claims for professional services to TRICARE

1  contractors on standard institutional claim form (Form CMS-1450 or UB-04) that includes the

2  express certification applicable to TRICARE claims described above in paragraph 40.

3  **FACTUAL ALLEGATIONS**

4  **A.    AmSurg CRNA Contracts**

5  147.    As a CRNA, Relator is qualified to provide anesthetics to patients in every practice

6  setting, including ASCs, and receives the same Medicare Part B reimbursement as an

7  anesthesiologist for all surgical procedures.  *See* 42 U.S.C. § 1395*l*(a)(1)(H).  All anesthesia

8  providers, including CRNAs, may directly submit claims for their services to the Medicare

9  program and other health plans and programs.

10  148.    On April 12, 2012, Relator became an independent contractor anesthesia provider

11  for Defendant AmSurg St. George Anesthesia, LLC, the exclusive provider of anesthesia services

12  for patients receiving outpatient gastroenterological surgical procedures (*i.e.*, colonoscopies and

13  endoscopies) at Defendant St. George Endoscopy Center LLC, a Medicare-certified ASC located

14  at 368 East Riverside Drive, Unit B, in St. George, Utah.

15  149.    Between 2012 and the present, Defendant St. George Endoscopy Center LLC was

16  owned by Defendant AmSurg Holdings, Inc. and St. George Gastroenterology Partners LLC, a

17  physician company whose members included James Bown, M.D. ("Bown"), Roger Siddoway,

18  M.D. ("Siddoway"), Lee J. Hixson, M.D. ("Hixson"), and Christoph Woerlein, M.D.

19  ("Woerlein"), all of whom are board certified in gastroenterology.

20  150.    Defendant St. George Endoscopy Center LLC is also the sole member and owner

21  of Defendant AmSurg St. George Anesthesia, LLC.  Likewise, the National Provider Identifiers

22  of Defendants St. George Endoscopy Center LLC and Defendant AmSurg St. George Anesthesia,

23  LLC list the ASC's address as their practice location and their authorized officials as Phillip

24  Clendenin, AmSurg's President.

25  151.    Virtually all aspects of Relator's contract were handled by AmSurg's corporate

26  offices in Nashville, specifically, the Anesthesia Services and Anesthesia Operations divisions.

27  At various times, Relator interacted with numerous AmSurg corporate employees regarding his

28  contract terms and conditions, including Angela Durham, Vice President, and Ondee Whitman,

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1   Associate Vice President of Anesthesia Services.  He also interacted with Directors Patrick

2   O'Neill, Dawn Vance, and Carolyn Truscott from Anesthesia Operations.

3         152.    As Relator and AmSurg discussed a potential relationship, AmSurg indicated that

4   the written services agreement would be delivered by AmSurg's legal department.  Based on this

5   experience, and his extensive interactions with AmSurg's corporate offices over the course of

6   eight years, Relator learned that the relevant anesthesia services agreements ("AmSurg ASAs")

7   were largely uniform for AmSurg's contracted anesthesia services providers throughout the

8   country.  The credentialing and onboarding process generally was handled by AmSurg's national

9   office in Nashville, not locally through the ASC.

10         153.    Relator's particular AmSurg ASA with Defendant AmSurg St. George Anesthesia,

11   LLC was signed by Christopher Kelly, then Defendant AmSurg Corp.'s General Counsel in

12   Nashville, Tennessee.  That agreement was executed in March 2012.

13         154.    The AmSurg ASAs placed virtually all responsibility for providing anesthesia

14   services on the contracted CRNA, including: establishing and implementing relevant policies and

15   standards for anesthesia services and drugs; scheduling and ensuring coverage for all surgical

16   procedures, including days for which the contracted CRNA is unavailable; preparing and

17   implementing education and training programs pertaining to anesthesia; providing any necessary

18   administrative support relevant to anesthesia services; and relevant record-keeping.

19         155.    The AmSurg ASAs state that the contracted CRNA is an independent contractor,

20   and shall not be considered an agent, employee, or joint venturer of AmSurg.  The contracted

21   CRNA is also solely responsible for maintaining and funding their own professional liability

22   insurance, taxes, paid time off, benefits, vacation, sick leave, and health care benefits.  Pursuant

23   to the AmSurg ASAs, the contracted CRNA would indemnify AmSurg for any liability or

24   attorney's fees in defending against any allegation that the CRNA is not independent contractors.

25         156.    Further, under the AmSurg ASAs, the contracted CRNA indemnifies and holds

26   harmless AmSurg or their owners or agents from any liability arising out of or in connection with

27   the CRNA's acts or omissions, and whether or not that liability is pursued under theories of joint

28   venture, non-delegable duties, or vicarious liability.

157.    The AmSurg ASAs also require the contracted CRNA to assign all claims for anesthesia services to AmSurg for billing and collection and to accept per diem rates as total compensation for their services.  While working for Defendant AmSurg St. George Anesthesia, LLC, Relator would occasionally receive claims information further confirming that Defendant AmSurg St. George Anesthesia, LLC was submitting or causing to be submitted claims (via St. George Endoscopy Center, LLC) for his anesthesia services at the ASC, including for his numerous Medicare or TRICARE patients, according to the terms of his AmSurg ASA.

158.    AmSurg also executed a second "Services Agreement" with CRNAs, including Relator.  This agreement reiterates the contracted CRNA's responsibility to "devote whatever time is necessary" to manage all aspects of anesthesia services at an AmSurg facility, including policies, procedures, standards of care, drugs and equipment, quality control, education and training programs, anesthesia related support for the ASC's Performance Improvement and Risk Management program, and administrative, scheduling, billing and management duties related to anesthesia.  This second agreement likewise reiterated the contracted CRNA's independent contractor status, AmSurg's complete lack of "control or direction" over anesthesia services and functions, and the CRNA's broad indemnification of AmSurg.

159.    AmSurg used this independent contractor model widely throughout its operations.  As an AmSurg contractor, Relator routinely received internal AmSurg e-mails announcing vacancies for independent contractor CRNAs and anesthesiologists to provide anesthesia services at AmSurg ASCs throughout the United States.  To cite just some examples, AmSurg transmitted e-mails to its internal team on the following dates:

        a.    April 16, 2015 (advertising 1099 CRNA positions in Kentucky and Texas)

        b.    September 30, 2015 (same, for Arizona, California, Florida, Maryland, Missouri, North Carolina, Ohio, Oklahoma, Tennessee, and Texas)

        c.    December 15, 2015 (California, Florida, Kentucky, Oklahoma)

        d.    February 4, 2016 (Oklahoma, Massachusetts, Florida, California, Ohio)

        e.    July 22, 2016 (Texas)

        f.    February 16, 2017 (California, Maryland, Ohio, South Carolina, Texas)

g.      February 25, 2019 (Florida, Massachusetts, Ohio)

h.      April 5, 2019 (Oklahoma)

160.    In addition, AmSurg would regularly write to its team of already-contracted CRNAs to seek coverage at various facilities for specific days, and each of these shifts was also typically paid on an independent contractor basis at a per diem rate.

161.    Under Relator's contract with defendant AmSurg St. George Anesthesia, LLC, he was paid a weekly rate of $4,100 or a per diem rate of $1,025 to provide anesthesia services for four days a week to patients receiving outpatient endoscopies at defendant St. George Endoscopy Center, LLC.  In addition, under the second "Services Agreement" contract described above, AmSurg paid CRNAs a modest extra stipend; in the case of Relator, $500 per month.  These payments to Relator were made by Defendant AmSurg, LLC.  Under Relator's AmSurg ASA, he was responsible for securing coverage for any days that he took off and for paying his own malpractice insurance.  From April 2012 until his contract was terminated in 2020, Relator received raises of his daily rate totaling $100, and had taken approximately 20 days off.

162.    On May 4, 2017, AmSurg sent an e-mail to Relator confirming that AmSurg Anesthesia Companies paid CRNAs on a per diem rate at all the AmSurg ASCs at which the AmSurg Anesthesia Companies provided anesthesia services.  Specifically, in a response to Relator's request that he and his fellow CRNA's rate be increased from $1,025 to $1,600 per day, Patrick O'Neil, then AmSurg's Regional Director of Ambulatory Anesthesia in Nashville, Tennessee, rejected the request, stating that "15 cases per day is an average work day in our centers" and "currently you and Greg are the highest paid CRNAs in the 63 centers that Amsurg does anesthesia [for]."

163.    Relator was told by Scott Gines, the director of Defendant St. George Endoscopy Center, LLC, that the ASC is owned by AmSurg (51%) and referring and non-referring physicians (49%) who split the profit on anesthesia revenue generated by Defendant AmSurg St. George Anesthesia, LLC according to the same ownership interests they have in the AmSurg ASC.  Christoph Woerlein, M.D., a former ASC Physician Owner of Defendant St. George

1    Endoscopy Center, LLC, also told Relator about this anesthesia revenue sharing arrangement with

2    the ASC Physician Owners.

3         164.    At each of the AmSurg ASCs, AmSurg retained an extraordinary percentage of

4    professional anesthesia revenue.  To take one example, during Relator's tenure with Defendant

5    St. George Endoscopy Center LLC, that ASC had two operating rooms and was open for

6    surgeries on approximately 200 days per year.  Relator was the assigned CRNA for one operating

7    room and there was a second CRNA with a similar per diem contract with Defendant AmSurg St.

8    George Anesthesia, LLC assigned to another operating room.  Relator and the other CRNA

9    provided anesthesia services for approximately 30 ASC endoscopy cases (15 each) per day or

10   6,000 cases per year, approximately 60% of which were for Medicare beneficiaries.  Meanwhile,

11   Defendant AmSurg St. George Anesthesia, LLC paid approximately $211,000 per year to Relator

12   and approximately $205,000 per year to the other CRNA for providing these anesthesia services

13   to Defendant St. George Endoscopy Center, LLC's patients.

14        165.    Based on Relator's and the other CRNA's payor mix and anesthesia base, time,

15   and ASA modifier units for the average 30 endoscopy cases that they perform each day, Relator

16   estimates that Defendant AmSurg St. George Anesthesia, LLC's total anesthesia revenue was

17   approximately $7,000 per operative day or $1.4 million per year.  Of this total revenue, the

18   amount received from Medicare is estimated at approximately $500,000, based on the volume of

19   Medicare patients and Medicare reimbursement rates.

20        166.    This anesthesia revenue translated to substantial profits, both for AmSurg and its

21   ASC Physician Owners, particularly because AmSurg and its ASCs had minimal additional costs

22   beyond paying the anesthesia professionals.  At Defendant St. George, based on its anesthesia

23   revenue ($1.4 million) and costs ($416,000 for CRNA per diem payments), AmSurg's average

24   annual profit on anesthesia revenue was approximately $980,000 (or about $500,000 per

25   procedure room), a staggering 71% profit margin on anesthesia services.

26        167.    This overall profit was then shared between AmSurg and its ASC Physician

27   Owners, consistent with the 51-49 split between them.  Thus, the approximately $980,000 in

28   annual profit would translate to approximately $500,000 in payments by AmSurg to St. George's

ASC Physician Owners (including Bown, Siddoway, Hixson, and Woerlein).  These profits derived from anesthesia professional fees were made to the ASC Physician Owners, even though these doctors had no direct right to that revenue because (i) they did not provide the anesthesia services, and (ii) the services were performed by separate healthcare professionals (CRNAs) that have the right to directly bill and be reimbursed for their own services.

168.    The same outcome obtained at the other AmSurg ASCs.  As similar outpatient centers, many of which were exclusively or substantially focused on GI procedures like St. George, the AmSurg ASCs stood to generate similar revenue from professional anesthesia fees, particularly on a per procedure room basis.  Moreover, AmSurg expressly admitted to Relator that its other CRNAs were paid at or below his rates—a fact that is consistent with Relator's understanding, based on his lengthy career as a CRNA at AmSurg, of AmSurg's prevailing per diem rates for its contracted CRNAs.  Thus, throughout its scores of ASCs, AmSurg's scheme permitted it to retain extraordinary percentages of the professional anesthesia revenue, likely amounting to profits of approximately $500,000 per year per procedure room.

169.    As explained below, this revenue stream constituted illegal remuneration both extracted *from* the CRNAs to whom AmSurg referred business and provided *to* physician owners who supplied referrals to AmSurg.  That remuneration is not a fair market value exchange for services rendered by AmSurg to the CRNAs.  To the contrary, as set out in detail above, AmSurg made clear in the AmSurg ASAs that all aspects of the delivery of anesthesia services—and the vast majority of the concomitant costs—were the responsibility of the CRNA.  To the extent AmSurg supplied the facility or capital equipment necessary to deliver anesthesia services, AmSurg was already compensated through a separate "facility fee" that it billed to public and private payers.  *See*, *e.g.*, 42 C.F.R. § 416.164(a) (payment of facility fee to ASC includes "(13) materials, including supplies and equipment for the administering and monitoring of anesthesia and (14) supervision of the services of an anesthetist by the operating surgeon.").  At most, AmSurg managed billing and collections of the CRNA's professional fee, a task does not warrant a sizeable percentage of the reimbursement amount itself, let alone half or more of it.

170.    In or around late 2012 to early 2013, Relator asked Angela Durham, then the AmSurg Regional Director for Ambulatory Anesthesia Services for Region 1, covering contracted anesthesia services at AmSurg ASCs in western states, whether Relator's independent contractor relationship with, and assignment of claims to, Defendant AmSurg St. George Anesthesia, LLC was legal.  Ms. Durham assured him that this arrangement complied with applicable laws.

171.    In March 2019, Relator again expressed his concern that his contract with Defendant AmSurg St. George Anesthesia, LLC might not be compliant by raising the issue with Brien Miller, M.D., a non-owner surgeon who performed surgeries at Relator's ASC, and Christine Morris, a clinical consultant for Relator's ASC.  Ms. Morris raised the issue with AmSurg directly, and Regional Vice President of Operations Leah Shaler did not fully address the issue of the legality of the arrangement with Relator, instead responding only that Relator's per diem payments were "fair market value" for his anesthesia services.

**B.    AmSurg Ownership and Management of AmSurg ASCs**

172.    As one of the nation's largest ASC management organizations, AmSurg is in the business of developing, owning, and operating ASCs in partnership with approximately 2,000 physicians and currently has ownership interests in approximately 260 ASCs and one surgical hospital in 35 states and the District of Columbia.  According to the AmSurg website, "[p]hysicians at more than 255 surgery centers have chosen AmSurg as their business partner" and its "typical surgery center partnership is operated under a consensus management business model, with the center's operating board comprised of equal representation by the physician partners and AmSurg."

173.    AmSurg's ownership of Defendant St. George Endoscopy Center LLC in partnership with St. George Gastroenterology Partners LLC, a company of physicians (including Bown, Siddoway, Hixson, and Woerlein) who performed surgical procedures at this ASC, was part of AmSurg's nationwide business model.

174.    Since at least 2012 and continuing through the present, under AmSurg's business model, each AmSurg ASC was a joint venture between AmSurg and physicians, including ASC

Physician Owners who referred their patients to the ASC for surgical procedures.  To own and operate each AmSurg ASC, AmSurg typically created a Tennessee limited liability company with the sole members being AmSurg Holdings, Inc. or another Envision subsidiary, with at least a 51% ownership interest, and the physicians, either individually or jointly through a single company or other entity, with no more than a 49% ownership interest in the ASC.  This is consistent with Relator's independent experience at St. George.  However, in California, which prohibits the corporate practice of medicine, and sometimes in other states, AmSurg would create limited partnerships to own the AmSurg ASCs, with AmSurg Holdings, Inc. being the general partner and the physicians being limited partners, but with the same 51% / 49% division of ownership interests between AmSurg Holdings, Inc. and the physician limited partners.  This business model was described by AmSurg in its Annual Report filing with the U.S. Securities and Exchange Commission ("10-K") for 2012 ("2012 10-K") as follows:

> Physicians are critical to the delivery of healthcare and are a valuable component of our operating model.  We currently operate 240 ASCs with over 2,000 physician partners.  We typically structure partnerships with physicians in a 51% / 49% ownership relationship, which we believe is mutually beneficial to us and our physician partners.
>
> ….
>
> As part of each acquisition or development transaction, we form a limited partnership or limited liability company and enter into a limited partnership agreement or operating agreement with our physician partners.  We generally own 51% of the limited partnerships or limited liability companies.  Under these agreements, we receive a percentage of the net income and cash distributions of the entity equal to our percentage ownership interest in the entity and have the right to the same percentage of the proceeds of a sale or liquidation of the entity. In the limited partnership structure, as the sole general partner, one of our affiliates is generally liable for the debts of the limited partnership.  However, the physician partners are generally required to guarantee their pro rata share of any indebtedness or lease agreements to which the limited partnership is a party in proportion to their ownership interest in the limited partnership.

175.    This AmSurg business model was similarly described by AmSurg in its 2015 10-K as follows:

> Physicians are critical to the delivery of healthcare and are a valuable component of our operating model.  At December 31, 2015, we operated 257 ASCs with approximately 2,000 physician partners and approximately 1,000 non-partner physicians who utilize our centers.  We typically structure partnerships with physicians in a 51% / 49% ownership relationship, whereby we are the majority member.

- 46 -

….

As part of each surgery center acquisition or development transaction, we generally form an LLC or LP, which are referred to herein as "partnerships" where certain states require and enter into an operating agreement or a LP agreement with our physician partners.  We generally own 51% of the partnerships.  Under these agreements, we receive a percentage of the net income and cash distributions of the entity equal to our percentage ownership interest in the entity and have the right to the same percentage of the proceeds upon a sale or liquidation of the entity.  In the LP structure, as the sole general partner, one of our affiliates is generally liable for the debts of the LP.  However, the physician partners are generally required to guarantee their pro rata share of any indebtedness or lease agreements to which the limited partnership is a party in proportion to their ownership interest in the LP.

176.    Between 2012 and the present, AmSurg's corporate and court filings confirm Relator's independent experience that while the AmSurg ASCs may handle clinical issues at a local level, AmSurg provides administrative and operational oversight of its business model from its Nashville headquarters.  As detailed above, AmSurg's ownership interest in the AmSurg ASCs was typically held by Defendant AmSurg Holdings, Inc. and each AmSurg ASC's NPI would usually identify the authorized official as an officer of AmSurg's Ambulatory Services Division. In addition, AmSurg's 2012 10-K further confirms its centralized operation of the AmSurg ASCs:

Under our partnership structure, physicians gain a partner in AmSurg who provides management services, including clinical and regulatory support, financial reporting, performance measurement, group purchasing, contracting, and marketing services.

….

We manage each limited partnership and limited liability company and oversee the business office, contracting, marketing, financial reporting, accreditation, clinical, regulatory and administrative operations of the surgery center.  The physician partners provide the center with a medical director and performance improvement chairman and may provide certain other specified services such as billing and collections, transcription and accounts payable processing.  In addition, the limited partnership or limited liability company may lease the services of certain non-physician personnel from entities affiliated with the physician partners, who will provide services at the center.  Certain significant aspects of the limited partnership's or limited liability company's governance are overseen by an operating board, which is comprised of equal representation by AmSurg and our physician partners.  We work closely with our physician partners to increase the likelihood of a successful partnership.

….

We have a dedicated business development team that is responsible for negotiating contracts with third party payors….  We also increase awareness of the benefits of our ASCs with employers and patients through public awareness programs, health fairs and screening programs, including programs designed to educate employers

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

and patients as to the health and cost benefits of our services.

177.    According to a 2017 AmSurg court pleading, AmSurg also maintained "an electronic library of form templates relating to various surgery center policies and procedures that can be accessed and utilized by the surgery centers in which AmSurg has an ownership interest." This, too, is consistent with Relator's independent experience at St. George, particularly when he was advised that the relevant service agreement would be delivered by AmSurg's legal department.

178.    In its 2015 10-K, AmSurg reported that it derived approximately 26% of its ASC revenues in 2015 and approximately 25% of its ASC revenues in 2013 and 2014 from governmental healthcare programs, primarily Medicare.  AmSurg further described its billing of AmSurg ASC facility services as follows:

> Revenues from our ASCs are derived from facility fees charged for surgical procedures performed and, at certain of our surgery centers (primarily centers that perform gastrointestinal endoscopy procedures), charges for anesthesia services provided by medical professionals employed or contracted by our centers.  These fees vary depending on the procedure, but usually include all charges for operating room usage, special equipment usage, supplies, recovery room usage, nursing staff and medications. Facility fees do not include professional fees charged by the physicians that perform the surgical procedures.  Revenues are recorded at the time of the patient encounter and billings for such procedures are made on or about that same date.

179.    As indicated in Attachment A, which reports aggregate Medicare claims data submitted by certain of the Defendant AmSurg ASCs from 2013–2019, AmSurg ASCs do in fact bill Medicare extensively.  In sum, the Defendant ASCs included in Attachment A billed over 650,000 procedures to Medicare from just 2013–2019.  Over the full statutory period, taking into account additional AmSurg ASCs for which data is not available or that will be revealed through discovery, the total number of claims submitted by AmSurg is likely far larger.  Further, the claims data in the attachment reflects only those charges submitted by the Defendant ASCs themselves, and not the charges submitted by the physicians and anesthetists that also inure to the benefit of AmSurg per the financial arrangements outlined above.

180.    Based on his decades of experience working in hospital, outpatient, and ASC settings, as well as at AmSurg specifically, Relator alleges that a substantial percentage of the

1    procedures identified in Attachment A were accompanied by a professional anesthesia services

2    charge.  As discussed above, AmSurg captured the majority of those professional anesthesia

3    charges through its improper kickback scheme.

4         181.    For example, Defendant St. George billed 18,470 services to Medicare from 2013–

5    2019, some of which would have been separately billed services associated with the same

6    "procedure," *e.g.*, a biopsy taken during a colonoscopy.  Relator and Greg Sanders, the CRNAs

7    who worked at St. George, billed 11,531 anesthesia procedures to Medicare during those years,

8    with somewhere between 95% and 99% of these being performed at St. George (versus the

9    occasional case at a different facility).

10        **C.      AmSurg Ownership and Management of AmSurg Anesthesia Companies**

11        182.    Defendant St. George Endoscopy Center LLC's ownership of Defendant AmSurg

12   St. George Anesthesia, LLC is consistent with AmSurg's nationwide business of partnering with

13   physicians at certain AmSurg ASCs by providing the ASC Physician Owners with an ownership

14   interest in an affiliated AmSurg Anesthesia Company that is the exclusive provider of anesthesia

15   services for their ASC patients.

16        183.    In particular, by way of Envision's Physician Services Division, AmSurg provides

17   professional anesthesia services to healthcare facilities, including the Defendant AmSurg ASCs.

18   In its 2015 10-K, AmSurg asserted that such outsourced physician services could benefit its ASCs

19   because they would, among other things, "create physician services segment new contract win

20   opportunities at our surgery centers" and "increase revenue opportunities within our

21   gastroenterology and multi-specialty facilities."

22        184.    Generally, AmSurg expanded its ASC management services to include

23   professional anesthesia services for certain AmSurg ASCs that provided gastroenterology surgical

24   procedures (*e.g.*, endoscopies and colonoscopies) and where the profit margin on insurance

25   reimbursement for anesthesia services, including from Medicare and TRICARE, was higher

26   because these surgical procedures were done faster and resulted in a higher volume of cases per

27   day.  As noted above, the names of the Defendant AmSurg ASCs and AmSurg Anesthesia

28   Companies indicate the majority are endoscopy centers.

185.   Since at least 2012 and continuing through the present, AmSurg set up AmSurg Anesthesia Companies that were owned by the AmSurg ASC (or by AmSurg and the ASC Physician Owners) to exclusively provide anesthesia services to the ASC Physician Owners' ASC patients.  The AmSurg Anesthesia Companies contracted with independent anesthetists, usually CRNAs but sometimes anesthesiologists, to provide professional anesthesia services to the AmSurg ASC's patients for a fixed per diem rate in exchange for assigning their claims to the AmSurg Anesthesia Company or the AmSurg ASC for billing and collection.  In its 2012 10-K, AmSurg acknowledged in a discussion of AmSurg ASC owners that "certain of our limited partnership and limited liability companies have entered into certain arrangements for professional services, including arrangements for anesthesia services."

186.   According to a May 2017 AmSurg e-mail, detailed above, AmSurg's per diem payments to contracted CRNAs did not exceed $1,025 per day.  Based on the average 15 anesthesia cases performed daily by contracted CRNAs at AmSurg ASCs, the insurance reimbursement received by the AmSurg Anesthesia Companies is substantially higher than the Companies' cost of paying the per diem rates to the CRNAs who perform the anesthesia services.  For example, in 2019, the average reimbursement for anesthesia services at Defendant St. George Endoscopy Center was approximately $3,500 a day for 15 anesthesia cases.

187.   By providing the ASC Physician Owners with an ownership interest in the AmSurg Anesthesia Companies, AmSurg shared the revenue with ASC Physician Owners from anesthesia services performed by the anesthesia providers for the Physicians' ASC patients based on the same ownership interest held by the ASC Physician Owners (usually 49%) in their AmSurg ASC.  In its 2012 and 2015 10-Ks, AmSurg confirmed that the AmSurg ASCs derived revenue from the AmSurg Anesthesia Companies' billing of anesthesia services, as follows:

> Our revenues are derived from facility fees charged for surgical procedures performed in our surgery centers **and, at certain of our surgery centers (primarily ASCs at which gastrointestinal procedures are performed), charges for anesthesia services delivered by medical professionals employed or contracted by our centers**.  These fees vary depending on the procedure, but usually include all charges for operating room usage, special equipment usage, supplies, recovery room usage, nursing staff and medications.  Facility fees do not include professional fees charged by the physician that performs the surgical procedure.  Revenue is recorded at the time of the patient encounter and billings for

such procedures are made on or about that same date.

AMSURG 2012 10-K (emphasis added).

> Revenues from our ASCs are derived from facility fees charged for surgical procedures performed **and, at certain of our surgery centers (primarily centers that perform gastrointestinal endoscopy procedures), charges for anesthesia services provided by medical professionals employed or contracted by our centers**. These fees vary depending on the procedure, but usually include all charges for operating room usage, special equipment usage, supplies, recovery room usage, nursing staff and medications. Facility fees do not include professional fees charged by the physicians that perform the surgical procedures. Revenues are recorded at the time of the patient encounter and billings for such procedures are made on or about that same date.

AmSurg 2015 10-K (emphasis added). AmSurg's 2015 10-K also indicated that the AmSurg ASCs' revenue for anesthesia services necessarily included Medicare reimbursement revenue as the 10-K stated that AmSurg had derived between 25% and 26% of its ASC revenue between 2013 and 2015 from governmental healthcare programs, primarily Medicare.

188.    Since at least 2012 to the present, AmSurg's corporate and court filings reflect that while the AmSurg ASCs and the AmSurg Anesthesia Companies may bill the anesthesia services provided by the AmSurg Anesthesia Companies at a local level, AmSurg provides administrative and operational oversight of the AmSurg Anesthesia Companies from its Nashville headquarters. As detailed above, AmSurg's ownership interest in the AmSurg Anesthesia Companies was typically held by the affiliated AmSurg ASC in which AmSurg Holdings, Inc. or another AmSurg subsidiary held a majority ownership interest and each AmSurg Anesthesia Company's NPI would usually identify its authorized official as the President of AmSurg's Ambulatory Services Division. Although the AmSurg Anesthesia Companies had names typically including the word "anesthesia" and the city where the affiliated AmSurg ASC was located, all of the AmSurg Anesthesia Companies were Tennessee companies with their principal place of business listed as AmSurg's Nashville headquarters. AmSurg also divided the United States into three regions with regional directors overseeing the AmSurg Anesthesia Companies and other anesthesia providers from AmSurg's Nashville Tennessee headquarters. In addition, AmSurg's 2015 10-K further confirmed its centralized operation of the AmSurg Anesthesia Companies:

> We are one of the two largest and most experienced providers of outsourced anesthesia services in the United States…. Our anesthesia care teams provide

anesthesiology services to hospitals, ASCs and other healthcare facilities in 19 states.  These teams are comprised of board-certified or board-eligible physicians and allied health professionals which include certified registered nurse anesthetists (CRNAs) and Anesthesia Assistants.  Our anesthesiologists are a key part of the effective management and productivity of hospital surgery departments, ASCs and other healthcare facilities.

….

Our physician services segment revenue primarily consists of fee for service revenue and contract revenue and is derived principally from the provision of physician services to patients of the healthcare facilities we serve.

….

Our physician services segment performs substantially all of the billing for our affiliated physicians and employs a billing staff of approximately 600 employees.

189.    As previously described, AmSurg also centrally administered the AmSurg Anesthesia Companies' contracts with independent anesthesia providers, including the marketing of independent contractor vacancies, contract negotiations, and *per diem* payments for providing anesthesia services at the AmSurg ASCs through its Ambulatory Services Division in Nashville, Tennessee.

### D.    Defendants Knowledge of Applicable Laws

190.    Since at least 2012 and continuing through the present, Defendants knew that the FCA imposed liability for federal healthcare program claims that were the result of AKS violations.  For example, in its 10-K for 2012, AmSurg acknowledged that the (1) "federal anti-kickback statute prohibits healthcare providers and others from soliciting, receiving, offering or paying, directly or indirectly, any remuneration (including any kickback, bribe or rebate) with the intent of generating referrals or orders for services or items covered by a federal healthcare program"; (2) the "anti-kickback statute is very broad in scope"; (3) "[c]ourts have found a violation of the anti-kickback statute if just one purpose of the remuneration is to generate referrals, even if there are other lawful purposes"; (4) "knowledge of the law or intent to violate the law is not required to establish a violation of the anti-kickback statute"; and (5) "submission of a claim for services or items generated in violation of the anti-kickback statute constitutes a false or fraudulent claim and may be subject to additional penalties under the federal False Claims Act." *See also* 42 U.S.C. § 1320a-7b(g) (2010).  AmSurg's 2012 10-K also recognized that the

AKS has a number of regulatory exceptions (known as "safe harbors") for certain financial arrangements which will not violate the statute if their specified conditions are satisfied, including safe harbors for ASC investments, investments in small business entities, and personal services or management contracts. *See also* 42 C.F.R. § 1001.952.

191.    Since at least 2012 and continuing through the present, Defendants also knew that the U.S. Department of Health and Human Services' Office of Inspector General ("OIG") had repeatedly informed the Medicare provider community that investments in health care facilities by providers or others in a position to refer patients or other healthcare business to the facilities violate the AKS if one purpose of the investment is to induce such referrals by sharing the resulting profits with the referring investors, and that OIG also has long-standing AKS concerns about joint ventures between those in a position to refer business, such as ASC physician owners, and those furnishing federal healthcare program services, especially when all or most of the joint venture's business is derived from one or more of the joint venturers. *See* Advisory Opinion No. 12-06 (June 1, 2012); 59 Fed. Reg. 65373, 65374 (Dec. 19, 1994).

192.    In a 1989 Special Fraud Alert, the OIG described a variety of joint venture arrangements that violated the AKS because they did not have a legitimate reason, but were instead intended to "lock up a stream of referrals from physician investors and to compensate them indirectly for these referrals." *See* OIG August 1989 Special Fraud Alert: Joint Venture Arrangements, available at 59 Fed. Reg. 65372, 65474 (Dec. 19, 1994). In an April 2003 Special Bulletin, OIG identified the type of contractual joint venture that would violate the AKS as follows:

> [A] health care provider in one line of business (hereinafter referred to as the "Owner") expands into a related health care business by contracting with an existing provider of a related item or service (hereinafter referred to as the "Manager/Supplier") to provide a new item or service to the Owner's existing patient population, including federal healthcare program patients.  The Manager/Supplier not only manages the new line of business, but may also supply it with inventory, employees, space, billing and other services.  In other words, the Owner contracts substantially the entire operation of the related line of business to the Manager/Supplier – otherwise a potential competitor – receiving in return the profits of the business as remuneration for its federal program referrals."

193.   The OIG has also "stated on numerous occasions its view that the opportunity to generate a fee could constitute illegal remuneration under the anti-kickback statute, even if no payment is made for a referral."  Advisory Opinion No. 13-15 (Nov. 5, 2013).

194.   With respect to ASCs, OIG's chief published concern in promulgating the safe harbor for ASC investments to promote cost savings from performing appropriate surgeries in an outpatient clinic rather than a hospital setting was that "a return on investment in an ASC might be a disguised payment for referrals."  64 Fed. Reg. 63518, 63536 (Nov. 19, 1999).  However, recognizing that some physician-owned ASCs could be beneficial to federal health care programs, the OIG concluded:

> Where the ASC is functionally an extension of a physician's office, so that the physician personally performs services at the ASC on his or her own patients as a substantial part of his or her medical practice, we believe that the ASC serves a bona fide business purpose and that the risk of improper payments for referrals is relatively low.

*Id*.  More specifically, the OIG believed that the safe harbor's requirement that each ASC physician owner must derive at least a third of their annual medical practice from the physician owner's performance of procedures at the ASC would "ensure that physician investors will have no significant incentive beyond receipt of their professional fees to refer to the entity or any of its investors, because any return on investment will be attributable primarily to legitimate business and only tangentially to possible referrals of ASC business."  *Id*. at 63537.

195.   In Advisory Opinion No. 12-06 (May 22, 2012), the OIG opined about whether the AKS could be violated by an arrangement between physician-owned ASCs and an anesthesia provider under which the ASC physician owners would set up anesthesia companies, owned by them or the ASCs, to exclusively provide and bill anesthesia services for their ASC patients and would contract with the anesthesia provider to perform such services at a negotiated rate, with the companies retaining any profits from claim collections.  Initially, the OIG concluded that the ASC physician owners' return on their investment in the anesthesia companies was not protected by either the safe harbor for ASC investments (because these companies were not ASCs) nor by the safe harbors for employees and personal services contracts, which only potentially applied to the companies' payments of the negotiated rate to the anesthesia provider.  The OIG also found

that the arrangement included many of the suspect elements of improper joint ventures previously

identified in its April 2003 Special Bulletin:

a. The ASC physician owners would be expanding into a related line of business – anesthesia services – that would be wholly dependent on the ASCs' referrals.

b. The ASC physician owners would not actually participate in the operation of the anesthesia companies, but rather would contract out substantially all of the operations exclusively to the anesthesia provider.

c. The ASC physician owners' actual business risk would be minimal because they would control the amount of business they would refer to the anesthesia.

d. The anesthesia provider was an established provider of the same services as the anesthesia companies and otherwise would be a competitor providing the services in its own right, billing insurers and patients in its own name, and collecting and retaining all available reimbursement; and

e. The anesthesia provider and the ASC physician owners would share in the economic benefit of the ASCs' new business, with the anesthesia provider receiving its share in the form of a negotiated rate and the ASC physician owners "receiving their share in the form of the residual profits from the new business."

As a result, the OIG opined that the ASC physician owners' receipt of profits from the anesthesia

companies could violate the AKS because the proposed arrangement appeared "designed to

permit the [ASC physician-owners] to do indirectly what they cannot do directly; that is, to

receive compensation, in the form of a portion of the [anesthesia provider's] anesthesia services

revenues, in return for their referrals to the [anesthesia provider]" and that this conclusion was

supported by the anesthesia provider being under competitive pressure to enter into the proposed

arrangements to avoid financial losses.

196.    In Advisory Opinion No. 13-15 (Nov. 5, 2013), the OIG also opined that the AKS

could be violated by a contract under which a psychiatric group paid an anesthesia provider a

fixed per diem rate to furnish anesthesia services for electroconvulsive therapy ("ECT") one day a

week and the anesthesia provider assigned its right to bill those services to the group.  The OIG

found that the personal services contract safe harbor contract did not protect the per diem

payments because the aggregate compensation over the life of the agreement was not set forth in

advance nor fair market value and did not apply to the remuneration provided by the anesthesia

1    provider to the group in the form of an opportunity to bill and collect the difference between the

2    per diem rate and insurance reimbursement.  Absent safe harbor protection, the OIG concluded

3    that there was a significant risk that the AKS would be violated because the arrangement "appears

4    to be designed to permit the Psychiatry Group to do indirectly what it cannot do directly; that is,

5    to receive compensation, in the form of a portion of [the provider's] anesthesia services revenues,

6    in return for the Psychiatry Group's referrals of ECT patients to Requestor for anesthesia

7    services."

8         197.    Defendants' knowledge of these OIG opinions and interpretation of the AKS in the

9    context of ASC investments and joint ventures was confirmed by AmSurg's 2012 10-K, in which

10   the company acknowledged that "limited partnerships and limited liability companies that own

11   our surgery centers do not meet all of the criteria of either of the investment interests safe harbors

12   or the surgery center safe harbor" and therefore did "not qualify for safe harbor protection from

13   government review or prosecution under the anti-kickback statute."  AmSurg further

14   acknowledged OIG's Advisory Opinion No. 12-06 stating that ASC physician owners' receipt of

15   profits from anesthesia services provided to their ASC patients through their ownership of

16   anesthesia companies that contracted the services to independent anesthetists could violate the

17   AKS:

18            In addition, certain of our limited partnership and limited liability companies have
              entered into certain arrangements for professional services, including arrangements
19            for anesthesia services.  In May 2012, the OIG issued an advisory opinion in which
              it concluded that two proposed arrangements between an anesthesia group and
20            physician-owned ASCs could result in prohibited remuneration under the federal
              anti-kickback statute.
21
22        198.    Nevertheless, in its 2012-10K, AmSurg stated that it "believe[d] our arrangements

23   for anesthesia services are unlike those described in the OIG advisory opinion and are in

24   compliance with the requirements of the federal anti-kickback statute."  This AmSurg statement

25   was knowingly false.

26        199.    Finally, in November 2021, the OIG issued Advisory Opinion 21-15, in which it

27   reiterated that ASC-CRNA relationships implicate the AKS through "the CRNA's reassignment

28   of billing rights" to the ASC, thus giving the ASC "the opportunity to earn a profit from the

CRNA's performance of services…."  The OIG found a low risk of fraud, however, because under the particular proposed arrangement described in that Opinion, the CRNA was certified by the ASC to be a "bon fide employee" of the ASC and was part of a "straightforward employment arrangement" where the ASC "assumes certain duties that may be typical of an employer."  This included, but was not expressly limited to, carrying out "human resources services" and "carrying liability insurance that covers [the ASC's] vicarious liability with respect to the CRNA."  As set out above, AmSurg's model is different:  AmSurg does not maintain bona fide employment relationships with CRNAs, but rather insists upon independent contractor relationships that shift the entirety of the burden of anesthesia services, malpractice insurance, benefits, health care coverage, and liability to the CRNAs.

### E.    **Defendants' First Kickback Scheme**

200.    Since at least 2012 and continuing through the present, AmSurg and the other Defendants knew and did not publicly disclose that the Defendant AmSurg Anesthesia Companies' per diem contracts with anesthesia providers were knowingly and willfully intended by them to solicit and receive illegal remuneration from the anesthesia providers in exchange for patient referrals to the anesthesia providers because the contracts, consistent with the suspect factors identified in OIG Advisory Opinion No. 13-15, had numerous problematic characteristics, including but not limited to the following:

a.    The Defendant AmSurg Anesthesia Companies' per diem contracts with anesthesia providers were not protected by the AKS safe harbor for personal services contracts, including because the aggregate compensation over the life of anesthesia providers' contracts was not set forth in advance and because this safe harbor did not apply to the remuneration provided by the anesthesia providers in the form of an opportunity to bill and collect the difference between the per diem rate and insurance reimbursement.

b.    Because Defendant AmSurg Anesthesia Companies were owned by Defendant AmSurg ASCs (or had an ownership structure that mirrored that of the affiliated AmSurg ASC) and were the exclusive provider of anesthesia services at those ASCs, the anesthesia providers' contracts required the anesthesia providers to provide illegal remuneration,

in the form of an opportunity for the Defendant AmSurg Anesthesia Companies to bill the anesthesia providers' assigned claims to insurance plans and programs and profit from the difference between the per diem rates and the higher insurance reimbursement, in exchange for the ASC Physician Owners' referrals of patients via the Defendant AmSurg Anesthesia Companies to the anesthesia providers.

c.      By assigning their claims, the contracted anesthesia professionals provided Defendant AmSurg Anesthesia Companies with substantial remuneration in exchange for such patient referrals because the insurance revenue billed and received by the Defendant AmSurg Anesthesia Companies was significantly higher (up to approximately 70%) than the per diem cost of providing the anesthesia services to AmSurg ASC patients.

201.   As such, AmSurg and the Defendant AmSurg Anesthesia Companies' arrangements with contracted per diem anesthesia providers violated the AKS because they designed this arrangement to permit the ASC Physician Owners and AmSurg Anesthesia Companies to knowingly and willfully "do indirectly what [they] cannot do directly; that is, to receive compensation, in the form of a portion of [the anesthesia providers'] anesthesia services revenues" in return for their referrals of AmSurg ASC patients to the anesthesia providers for anesthesia services.  *See* OIG Advisory Opinion No. 13-15.

**F.      Defendants' Second Kickback Scheme**

202.   AmSurg and the AmSurg ASC owners, through the AmSurg Anesthesia Companies bill and receive reimbursement for anesthesia services performed by Relator and other anesthesia providers throughout the nation.

203.   Since at least 2012 and continuing through the present, AmSurg and the other Defendants knew and did not publicly disclose that their provision of an ownership interest to ASC Physician Owners in the AmSurg Anesthesia Companies and a resulting share in the profits from anesthesia services performed on their ASC patients by contracted anesthesia providers was willfully and knowingly intended to illegally induce the ASC Physician Owners to refer their patients to their AmSurg ASCs and the AmSurg Anesthesia Companies because, consistent with the suspect factors identified by OIG Advisory Opinion No. 12-06, AmSurg's joint venture with

the ASC Physician Owners had numerous problematic characteristics, including but not limited to the following:

a.       The ASC Physician Owners' ownership interest and receipt of profits from their investment in an AmSurg Anesthesia Company were not protected by the AKS regulatory safe harbors for ASC investments and investments in small entities or any other safe harbor, including because AmSurg Anesthesia Company was not an ASC and more than 40% of the AmSurg Anesthesia Company's revenue was generated by the ASC Physician Owners who performed surgeries requiring anesthesia at the ASC.

b.       Through their ownership interest in an AmSurg Anesthesia Company, the ASC Physician Owners were expanding into a related line of business—anesthesia services—that would be wholly dependent on their referrals of patients to their AmSurg ASC because the AmSurg Anesthesia Company was the exclusive provider of anesthesia services for those patients.

c.       The ASC Physician Owners did not actually participate in the operation of the AmSurg Anesthesia Company because AmSurg contracted out all the anesthesia services to contracted anesthesia providers paid at per diem rates and then billed the anesthesia providers' assigned claims to health insurance plans and collected the resulting anesthesia revenue.

d.       The ASC Physician Owners' actual business risk with respect to their ownership interest in the AmSurg Anesthesia Company was minimal because they would control the amount of patient business they would refer to the AmSurg Anesthesia Company, and because the cost of providing anesthesia services through per diem anesthesia providers was far less than the health plan and program reimbursement billed and collected by the AmSurg Anesthesia Company.

e.       The contracted anesthesia providers were established providers of the same anesthesia services as the AmSurg Anesthesia Companies and, absent their contract, would be competitors providing the anesthesia services in their own right, billing insurers and patients in their own names, and collecting and retaining all available reimbursement; and

f.      The contracted anesthesia providers and the ASC Physician Owners shared in the economic benefit of the AmSurg ASCs' new anesthesia business, with the anesthesia providers receiving their share in the form of the negotiated per diem rates and the ASC Physician Owners "receiving their share in the form of the residual profits from the new business" which, based on the significant difference between the anesthesia providers' per diem rates and the higher insurance reimbursement received, were substantial.

204.    As such, AmSurg and the Defendants' provision to ASC Physician Owners of an ownership interest in Defendant AmSurg Anesthesia Companies and a resulting share of profits from anesthesia services provided to their AmSurg ASC patients violated the AKS because Defendants knowingly and willfully designed this arrangement to permit the ASC Physician Owners "to do indirectly what they cannot do directly; that is, to receive compensation, in the form of a portion of the [CRNAs'] anesthesia services revenues" in return for their patient referrals to the Defendant AmSurg ASCs and affiliated AmSurg Anesthesia Companies.

**G.      Improper Incentives Caused by Defendants' Kickback Schemes**

205.    The OIG's Advisory Opinion No. 12-06 acknowledges that one fundamental purpose of the AKS is "to ensure that referrals will be based on sound medical judgment, and that health care professionals will compete for business based on quality and convenience, instead of paying for referrals."  AmSurg's model for anesthesia services directly contravenes that purpose. Indeed, having implemented a scheme that funneled substantial professional anesthesia revenues to the very physician co-owners that referred cases to the ASCs—remuneration that is not protected by any AKS safe harbor—AmSurg's emphasis on CRNAs' independent contractor status and per diem payment further incentivized profit over patient outcomes.

206.    In contrast to direct employment of salaried CRNAs, for example, AmSurg's scheme maximized the ASC Physician Owners' profit from anesthesia services by:  (i) offloading the ancillary costs of anesthesia services, such as professional liability insurance, onto the contracted CRNAs; (ii) reducing the financial risk associated with fluctuations in the volume of surgeries by paying CRNAs on a per diem basis; (iii) facilitating the typically impermissible sharing of anesthesia profits across all ASC Physician Owners, including those whose specialties

do not typically call for anesthesia services; and (iv) in some cases, allowing the ASC to avoid denial of claims by plans that would otherwise object to the ASC billing for anesthesia services in addition to a facility fee.  As alleged above, these and other aspects of AmSurg's model resulted in an estimated 70% profit margin for AmSurg and the ASC Physician Owners—an amount that cannot reasonably be explained as fair value for the limited services provided to the CRNAs.

207.    The scheme devised and implemented by AmSurg incentivized Defendants and the ASC Physician Owners to:  (i) order unnecessary ASC procedures by essentially doubling the referring surgeon's financial incentive—*i.e.*, the receipt of two professional fees instead of one; (ii) order unnecessary and dangerous anesthesia services, especially for procedures (*e.g.*, endoscopies and colonoscopies) for which anesthesia is not always necessary; (iii) refer dangerous surgeries requiring anesthesia to the ASC, even if the surgery should have been performed in a hospital because of the patient's age and comorbidities; (iv) select anesthesia professionals based on their willingness to share anesthesia profits rather than the quality of services they provide; (v) pressure CRNAs to administer anesthesia against the CRNAs' better clinical judgment; (vi) rush services and treat as many patients as possible in order to maximize the return on investment for the CRNAs' daily or weekly per diem rate.

208.    These improper financial incentives were felt acutely at the Defendant St. George ASC.  Every week, Relator was forced to perform anesthesia on patients whose overall risk (as measured by the patients' ASA Physical Status Classification), counseled that the patients should be treated at a hospital, where adverse reactions or outcomes could be better managed.  Relator and the other contracted CRNA at the St. George ASC, Sanders, would repeatedly complain about these cases, reiterating to AmSurg ASC staff that the relevant risk standards and policies needed to be followed.  On numerous occasions, Relator and Sanders advised that they would not perform anesthesia on certain patients again, only to have those patients reappear having been cleared by the AmSurg ASC staff despite the CRNAs' warnings.  On numerous occasions, CRNAs who covered for Relator and Sanders remarked on the difficulty of anesthesia cases being performed at the St. George ASC, and asked with concern whether the contracted CRNAs were dealing with such cases on a regular basis (which they were).  This conduct was consistent with

AmSurg's overall incentive to funnel as many patients as possible through its ASCs, thereby increasing profits both to AmSurg and the ASC Physician Owners.

209.   These profit-motivated policies and practices put AmSurg's contracted CRNAs in untenable positions.  Refusal to perform the anesthesia might result in losing the favor of AmSurg or the ASC Physician Owners, and ultimately losing business at AmSurg facilities.  Likewise, given the extensive preparatory efforts required for many ASC procedures (*e.g.*, colonoscopies) and the discomfort that high-risk patients may feel absent anesthesia (which in turn could result in dangerous blood pressure or heart rate), CRNAs —like Relator—may not have seen refusal as a practical option.  At the same time, AmSurg devised this scheme to ensure that the contracted CRNAs would be liable for any adverse reaction to the anesthesia, by virtue of the broad indemnity clauses included in the AmSurg ASAs.

210.   In enacting the AKS, Congress determined that such incentives are so pernicious that all claims for reimbursement tainted by them automatically violate the FCA.  Defendants nevertheless submitted or caused to be submitted hundreds of thousands of such claims in order to enrich themselves at the expense of Medicare, TRICARE, and their own patients.

**FIRST CLAIM FOR RELIEF**
**FALSE CLAIMS ACT: PRESENTATION OF FALSE CLAIMS**
**31 U.S.C. § 3729(a)(1)**
**(Against All Defendants)**

211.   Relator incorporates by reference paragraphs 1–210 of this First Amended Complaint as though fully set forth herein.

212.   Since at least 2012 and continuing through the present, Defendants knowingly submitted or caused to be submitted false claims to the Medicare and TRICARE programs that were the result of violations of the AKS, consisting of:

a.     The Medicare and TRICARE claims of Defendant AmSurg St. George Anesthesia, LLC and the other Defendant AmSurg Anesthesia Companies for anesthesia services provided to patients of Defendant St. George Endoscopy Center, LLC and the other defendant AmSurg ASCs by contracted CRNAs that were the result of illegal remuneration by the CRNAs to Defendant AmSurg St. George Anesthesia, LLC and the other Defendant AmSurg Anesthesia

1   Companies in the form of an opportunity to bill the CRNAs' claims and profit from anesthesia

2   reimbursement in exchange for patient referrals to the CRNAs by Defendant AmSurg St. George

3   Anesthesia, LLC and the other Defendant AmSurg Anesthesia Companies; and

4        b.      The Medicare and TRICARE claims of (i) Defendant St. George

5   Endoscopy Center, LLC and the other defendant AmSurg ASCs for facility services, (ii)

6   Defendant AmSurg St. George Anesthesia, LLC and the other Defendant AmSurg Anesthesia

7   Companies for anesthesia services, and (iii) the ASC Physician Owners for professional services,

8   that were all the result of illegal remuneration provided by Defendants to the ASC Physician

9   Owners in the form of an ownership interest in Defendant AmSurg St. George Anesthesia, LLC

10  or one of the other Defendant AmSurg Anesthesia Companies and a share in the profits from the

11  anesthesia services provided to their ASC patients by anesthesia professionals in order to induce

12  the ASC Physician Owners' referrals of patients to Defendant St. George Endoscopy Center,

13  Defendant AmSurg St. George Anesthesia, LLC, or one of the other Defendant AmSurg ASCs

14  and Defendant AmSurg Anesthesia Companies.

15       213.    The false claims that Defendants submitted or caused to be submitted include, but

16  are not limited to, the claims summarized in Attachment A, and the associated professional

17  services fees billed by the ASC Physician Owners and the anesthesia professionals.

18       214.    The false Medicare and TRICARE  claims that Defendants submitted or caused to

19  be submitted include, but are not limited to, the following claims submitted on or about the

20  specified dates by Defendant St. George Endoscopy Center, LLC for facility services, Defendant

21  AmSurg St. George Anesthesia, LLC for anesthesia services, and the specified ASC Physician

22  owners for professional services provided to the following ASC patients for the following

23  surgical procedures:

| Patient Initials | Claim Date | Surgical Procedure | Federal Healthcare Program | ASC Physician Owner |
|---|---|---|---|---|
| CM | 04/02/2019 | Endoscopy | Medicare | Bown |
| WE | 04/02/2019 | Colonoscopy | Medicare | Bown |
| WF | 04/02/2019 | Endoscopy/Colonoscopy | Medicare | Bown |
| MU | 04/02/2019 | Colonoscopy | Medicare | Bown |

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

| Patient Initials | Claim Date | Surgical Procedure | Federal Healthcare Program | ASC Physician Owner |
|---|---|---|---|---|
| RG | 04/02/2019 | Endoscopy | Medicare | Bown |
| LEB | 04/02/2019 | Colonoscopy | Medicare | Bown |
| TT | 04/02/2019 | Colonoscopy | Medicare/Tricare | Siddoway |
| SC | 04/02/2019 | Colonoscopy | Medicare | Siddoway |
| TL | 04/02/2019 | Colonoscopy | Medicare | Siddoway |
| RM | 04/02/2019 | Colonoscopy | Medicare | Siddoway |
| MB | 04/02/2019 | Colonoscopy | Medicare | Siddoway |
| DM | 04/02/2019 | Colonoscopy | Medicare/Tricare | Siddoway |
| VH | 04/03/2019 | Colonoscopy | Medicare | Siddoway |
| WS | 04/03/2019 | Colonoscopy | Medicare | Siddoway |
| DB | 04/03/2019 | Colonoscopy | Medicare | Siddoway |
| LN | 04/03/2019 | Colonoscopy | Medicare | Siddoway |

215.    By virtue of the false or fraudulent claims made or caused to be made by Defendants, the United States incurred damages and therefore is entitled to treble damages under the FCA, to be determined at trial, plus a civil penalty for each FCA violation.

**SECOND CLAIM FOR RELIEF**
**FALSE CLAIMS ACT: MAKING OR USING FALSE**
**RECORD OR STATEMENT**
**31 U.S.C. § 3729(A)(2)**
**(Against All Defendants)**

216.    Relator incorporates by reference paragraphs 1–215 of this First Amended Complaint as though fully set forth herein.

217.    Since at least 2012 and continuing through the present, Defendants knowingly made, used or caused to be made or used, false records or statements, to get the United States to pay false and fraudulent Medicare and TRICARE claims by the Defendant AmSurg ASCs for facility services, Defendant AmSurg Anesthesia Companies for anesthesia services, and the ASC Physician Owners for professional services, provided to Medicare and TRICARE patients at the Defendant AmSurg ASCs.

218.    By virtue of the false or fraudulent records or statements made or caused to be made by Defendants, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each FCA violation.

**THIRD CLAIM FOR RELIEF**
**FALSE CLAIMS ACT: REVERSE FALSE CLAIMS**
**31 U.S.C. § 3729(a)(1)(G)**
**(Against All Defendants)**

219.    Relator incorporates by reference paragraphs 1–218 of this First Amended Complaint as though fully set forth herein.

220.    Since at least 2012 and continuing through the present, Defendants knowingly concealed or caused to be concealed an obligation to pay or transmit money or property to the United States, consisting of the Medicare and TRICARE overpayments made on the false claims by the Defendant AmSurg ASCs for facility services, Defendant AmSurg Anesthesia Companies for anesthesia services, and ASC Physician Owners for professional services, provided to Medicare and TRICARE patients at the Defendant AmSurg ASCs.

221.    By virtue of Defendants' knowing failure to return these Medicare and TRICARE overpayments, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each FCA violation.

**FOURTH CLAIM FOR RELIEF**
**FALSE CLAIMS ACT: CONSPIRACY**
**31 U.S.C. § 3729(a)(1)(C)**
**(Against All Defendants)**

222.    Relator incorporates by reference paragraphs 1–221 of this First Amended Complaint as though fully set forth herein.

223.    Since at least 2012 and continuing through the present, Defendants knowingly conspired with each other and the ASC Physician Owners to violate the FCA, 31 U.S.C. § 3729(a)(1)(A), (B) and/or (G), by submitting or causing to be submitted false or fraudulent claims to the Medicare and TRICARE programs.

224.    By virtue of this conspiracy, the United States suffered damages and therefore is entitled to treble damages under the False Claims Act, to be determined at trial, plus a civil penalty for each FCA violation.

1

**PRAYER**

2     WHEREFORE, Relator, on behalf of the United States, demands and prays that judgment

3  be entered in favor of the United States and against Defendants, jointly and severally, as follows:

4          a.     Defendants pay an amount equal to each and every false or fraudulent

5  claim or retention of funds, multiplied as provided for in 31 U.S.C. § 3729(a)(1), plus a civil

6  penalty of not less than $5,000 or more than $11,000 per claim or violation as provided by

7  31 U.S.C. § 3729(a)(1), as adjusted by the Federal Civil Penalties Inflation Adjustment Act of

8  1990, to the extent such multiplied penalties shall fairly compensate the United States of America

9  for losses resulting from the various schemes undertaken by Defendants, together with penalties

10  for specific claims to be identified at trial after full discovery;

11          b.     Relator be awarded the maximum amount allowed pursuant to 31 U.S.C.

12  § 3730(d);

13          c.     Defendants cease and desist from violating the False Claims Act, 31 U.S.C.

14  §§ 3729 *et seq.*;

15          d.     Relator be awarded all costs of this action, including attorneys' fees,

16  expenses, and costs pursuant to 31 U.S.C. § 3730(d); and

17          e.     The United States and Relator be granted all costs, pre- and post-judgment

18  interest and all such further relief as the Court deems just and proper.

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

1

## JURY DEMAND

2      Pursuant to Federal Rule of Civil Procedure 38(b), Relator demands a jury trial for all claims

3   and issues so triable.

4

5

Dated: April 11, 2022                    Respectfully submitted,

6
                                          **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**
7

8                                             */s/ Nimish R. Desai*

9                                          Robert J. Nelson
                                           Nimish R. Desai
10                                         Nicholas R. Hartmann
                                           275 Battery Street, 29th Floor
11                                         San Francisco, CA  94111-3339

12                                         **NELSON HARDIMAN, LLP**
                                           Mark S. Hardiman
13                                         1100 Glendon Avenue, 14th Floor
                                           Los Angeles, CA  90024
14

15                                         *Attorneys for Plaintiff-Relator Jack Waters*

16

17

18

19

20

21

22

23

24

25

26

27

28

**FIRST AMENDED COMPLAINT**
CASE NO.  2:19-CV-0873 TLN AC

**Attachment A: AmSurg ASC Claims Data (2013-2019)**

**Source:** https://data.cms.gov/provider-summary-by-type-of-service/medicare-physician-other-practitioners/
medicare-physician-other-practitioners-by-provider-and-service
**Total Services:** Number of services provided
**Avg Medicare Payment:** for each procedure type, the lowest annual average payment reported from 2013-2019

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| 16 | **St George Endoscopy Center Llc** | **18,470** | |
| | Balloon dilation of esophagus using an endoscope | 132 | 421.35 |
| | Biopsy of large bowel using an endoscope | 4,983 | 247.54 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,372 | 198.34 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 279 | 209.49 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,840 | 309.03 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,471 | 301.60 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 1,145 | 178.67 |
| | Diagnostic examination of large bowel using an endoscope | 445 | 197.41 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 162 | 228.19 |
| | Dilation of esophagus | 1,526 | 101.37 |
| | Injection of large bowel using an endoscope | 15 | 154.21 |
| | Injections of large bowel using an endoscope | 151 | 176.61 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 515 | 234.51 |
| | Removal of hemorrhoid by rubber banding | 798 | 111.00 |
| | Removal of large bowel tissue using an endoscope | 18 | 332.00 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 65 | 424.38 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 12 | 382.17 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,541 | 284.29 |
| 18 | **North Valley Endoscopy Center Llc** | **12,020** | |
| | Biopsy of large bowel using an endoscope | 2,832 | 279.38 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,578 | 240.53 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 416 | 232.69 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,218 | 324.27 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,143 | 325.19 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 209 | 210.50 |
| | Diagnostic examination of large bowel using an endoscope | 737 | 243.31 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 60 | 247.23 |
| | Dilation of esophagus | 247 | 112.06 |
| | Injection of large bowel using an endoscope | 22 | 196.73 |
| | Injections of large bowel using an endoscope | 37 | 214.86 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 941 | 250.90 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,580 | 302.77 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 1 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| 22 | **Fresno Ca Endoscopy Asc, Lp** | **36,978** | |
| | Balloon dilation of esophagus using an endoscope | 334 | 432.25 |
| | Biopsy of large bowel using an endoscope | 5,970 | 266.87 |
| | Biopsy of small bowel using an endoscope | 173 | 324.51 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 5,723 | 233.42 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 948 | 241.02 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 3,277 | 345.28 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 2,019 | 331.93 |
| | Control of bleeding in large bowel using an endoscope | 82 | 165.35 |
| | Control of bleeding of esophagus, stomach, and/or upper small bowel using an endoscope | 11 | 477.53 |
| | Destruction of growths on esophagus, stomach, and/or upper small bowel using an endoscope | 27 | 461.25 |
| | Destruction of large bowel growths using an endoscope | 614 | 279.45 |
| | Destruction of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 16 | 435.66 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 1,909 | 231.80 |
| | Diagnostic examination of large bowel using an endoscope | 1,793 | 232.33 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 436 | 255.79 |
| | Dilation of esophagus | 1,770 | 114.87 |
| | Dilation of stomach outlet using an endoscope | 11 | 497.22 |
| | Injection of large bowel using an endoscope | 87 | 165.66 |
| | Injections of large bowel using an endoscope | 465 | 185.82 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 432 | 222.34 |
| | Insertion of stomach tube using an endoscope | 25 | 414.72 |
| | Removal of foreign body of esophagus, stomach, and/or upper small bowel using an endoscope | 11 | 234.41 |
| | Removal of growths in large bowel using an endoscope | 322 | 324.99 |
| | Removal of large bowel tissue using an endoscope | 43 | 339.94 |
| | Removal of polyps or growths in large bowel using an endoscope | 3,015 | 237.16 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 51 | 464.49 |
| | Removal of polyps or growths of large bowel using an endoscope | 7,332 | 294.76 |
| | Tying of dilated veins of stomach and/or esophagus using an endoscope | 82 | 452.58 |
| 24 | **Torrance Ca Multispecialty Asc Llc** | **7,714** | |
| | Correction of toe joint deformity | 143 | 497.04 |
| | Creation of eye fluid drainage tract | 84 | 667.08 |
| | Creation of shunt to improve eye fluid flow | 40 | 860.09 |
| | Enlargement of eyelid margin | 27 | 385.41 |
| | Exchange of lens prosthesis | 11 | 594.76 |
| | Extensive repair of turning-outward eyelid defect | 44 | 420.95 |
| | Imaging guidance for procedure, up to 1 hour | 13 | 34.52 |
| | Injection of substance into spinal canal of lower back or sacrum using imaging guidance | 14 | 244.25 |
| | Internal insertion of eye fluid drainage device | 173 | 1,479.41 |
| | Laser repair to improve eye fluid flow, 1 or more sessions | 171 | 106.46 |
| | Muscle flap wound repair at head and neck | 14 | 1,023.98 |
| | Removal of cataract with insertion of lens | 5,605 | 830.00 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 2 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Removal of central venous catheter for infusion | 19 | 211.08 |
| | Removal of excessive skin and fat of upper eyelid | 211 | 432.68 |
| | Removal of eye fluid (vitreous) between the lens and retina | 35 | 1,193.44 |
| | Removal of membrane from the retina | 19 | 1,427.34 |
| | Removal of membrane from the retina, pars plana approach | 94 | 1,483.38 |
| | Removal of recurring cataract in lens capsule using laser | 702 | 195.05 |
| | Repair of conjunctiva | 20 | 563.93 |
| | Repair of defect of sclera with graft | 43 | 354.33 |
| | Repair of detached retina and drainage of eye fluid between lens and retina | 118 | 1,373.32 |
| | Repair of holes in retina with removal of retinal membrane | 75 | 1,374.15 |
| | Repair of tendon of upper eyelid | 18 | 537.49 |
| | Shortening or advancement of upper eyelid muscle to correct drooping or paralysis | 21 | 530.02 |
| 26 | **Temecula Ca United Surgery Center, Lp** | **6,140** | |
| | Balloon dilation of esophagus using an endoscope | 193 | 402.34 |
| | Biopsy of large bowel using an endoscope | 1,273 | 271.59 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,312 | 224.62 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 24 | 361.29 |
| | Diagnostic examination of large bowel using an endoscope | 15 | 357.80 |
| | Dilation of esophagus | 14 | 328.97 |
| | Injection of substance into spinal canal of lower back or sacrum using imaging guidance | 47 | 233.53 |
| | Injection, bupivacaine liposome, 1 mg | 2,128 | 0.96 |
| | Injections of large bowel using an endoscope | 11 | 258.72 |
| | Injections of lower or sacral spine facet joint using imaging guidance | 46 | 220.65 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 330 | 517.15 |
| | Removal of polyps or growths of large bowel using an endoscope | 593 | 325.07 |
| | Tying of large bowel using an endoscope | 154 | 338.77 |
| 28 | **Temecula Ca Endoscopy Asc Lp** | **11,357** | |
| | Balloon dilation of esophagus using an endoscope | 408 | 385.27 |
| | Biopsy of large bowel using an endoscope | 3,605 | 258.84 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,140 | 236.85 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 752 | 222.53 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 126 | 312.86 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 86 | 313.99 |
| | Destruction of esophageal polyps or growths using an endoscope | 19 | 878.83 |
| | Destruction of growths of esophagus using an endoscope | 23 | 907.86 |
| | Diagnostic examination of large bowel using an endoscope | 153 | 243.26 |
| | Dilation of esophagus | 101 | 114.52 |
| | Injections of large bowel using an endoscope | 51 | 178.90 |
| | Removal of hemorrhoid by rubber banding | 294 | 82.28 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 695 | 463.28 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 63 | 432.87 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,538 | 310.85 |
| | Rubber banding of large bowel using an endoscope | 13 | 388.54 |
| | Tying of large bowel using an endoscope | 290 | 326.48 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 3 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| 30 | **Escondido Ca Endoscopy Asc Lp** | **8,968** | |
| | Balloon dilation of esophagus using an endoscope | 367 | 441.41 |
| | Balloon dilation of esophagus, stomach, and/or upper small bowel using an endoscope | 16 | 468.86 |
| | Biopsy of large bowel using an endoscope | 1,582 | 299.63 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,366 | 250.50 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 226 | 238.11 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,354 | 355.62 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,038 | 358.18 |
| | Control of bleeding in large bowel using an endoscope | 32 | 218.17 |
| | Destruction of large bowel growths using an endoscope | 13 | 403.00 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 557 | 267.48 |
| | Diagnostic examination of large bowel using an endoscope | 943 | 255.46 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 128 | 256.69 |
| | Injection of large bowel using an endoscope | 17 | 204.55 |
| | Injections of large bowel using an endoscope | 51 | 224.01 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,196 | 323.53 |
| | Ultrasound examination of esophagus, stomach and/or upper small bowel using an endoscope | 57 | 448.93 |
| | Ultrasound examination of esophagus, stomach, upper small bowel using an endoscope | 25 | 448.19 |
| 32 | **San Luis Obispo Ca Endoscopy Asc Lp** | **6,830** | |
| | Biopsy of large bowel using an endoscope | 1,286 | 307.35 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 996 | 267.94 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 152 | 264.59 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 842 | 382.56 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 648 | 371.55 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 195 | 253.15 |
| | Diagnostic examination of large bowel using an endoscope | 448 | 271.00 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 38 | 287.05 |
| | Injection of large bowel using an endoscope | 12 | 191.90 |
| | Injections of large bowel using an endoscope | 51 | 241.64 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 418 | 308.83 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,744 | 349.58 |
| 34 | **Marin Endoscopy Center, Llc** | **13,964** | |
| | Biopsy of large bowel using an endoscope | 4,241 | 334.06 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,188 | 299.69 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 421 | 281.45 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,161 | 400.67 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,215 | 402.51 |
| | Destruction of large bowel growths using an endoscope | 65 | 452.41 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 4 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 197 | 307.77 |
| | Diagnostic examination of large bowel using an endoscope | 404 | 298.85 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 50 | 302.28 |
| | Injection of large bowel using an endoscope | 41 | 245.51 |
| | Injections of large bowel using an endoscope | 251 | 222.65 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 330 | 321.32 |
| | Removal of growths in large bowel using an endoscope | 126 | 369.39 |
| | Removal of large bowel tissue using an endoscope | 29 | 452.41 |
| | Removal of polyps or growths in large bowel using an endoscope | 64 | 280.96 |
| | Removal of polyps or growths of large bowel using an endoscope | 3,181 | 386.63 |
| 36 | **La Jolla Endoscopy Center Lp** | **6,363** | |
| | Balloon dilation of esophagus using an endoscope | 143 | 447.30 |
| | Biopsy of large bowel using an endoscope | 1,711 | 185.61 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,102 | 241.77 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 221 | 233.61 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 526 | 332.72 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 575 | 319.74 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 490 | 269.67 |
| | Diagnostic examination of large bowel using an endoscope | 437 | 76.19 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 80 | 251.66 |
| | Dilation of esophagus | 27 | 274.81 |
| | Injections of large bowel using an endoscope | 13 | 236.78 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 11 | 344.04 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,027 | 323.63 |
| 38 | **The Oakland Ca Endoscopy Asc Lp** | **18,342** | |
| | Biopsy of large bowel using an endoscope | 618 | 322.99 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 476 | 351.75 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 305 | 484.69 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 123 | 485.37 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 93 | 377.42 |
| | Diagnostic examination of large bowel using an endoscope | 142 | 114.31 |
| | Injections of large bowel using an endoscope | 16 | 322.95 |
| | Removal of hemorrhoid by rubber banding | 78 | 180.54 |
| | Removal of polyps or growths of large bowel using an endoscope | 753 | 517.26 |
| | Biopsy of large bowel using an endoscope | 4,199 | 221.06 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,388 | 309.93 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 532 | 285.95 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,302 | 408.63 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 857 | 406.72 |
| | Colorectal cancer screening; flexible sigmoidoscopy | 16 | 133.27 |

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---:|---:|
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 551 | 315.87 |
| | Diagnostic examination of large bowel using an endoscope | 994 | 87.38 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 132 | 299.81 |
| | Injection of large bowel using an endoscope | 29 | 210.49 |
| | Injections of large bowel using an endoscope | 101 | 223.51 |
| | Removal of hemorrhoid by rubber banding | 409 | 176.85 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 14 | 611.85 |
| | Removal of polyps or growths of large bowel using an endoscope | 4,214 | 395.22 |
| 40 | **Gastroenterology Associates Endoscopy Center, Llc** | **29,647** | |
| | Balloon dilation of esophagus using an endoscope | 188 | 501.77 |
| | Biopsy of large bowel using an endoscope | 6,909 | 210.45 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 5,942 | 284.45 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 834 | 297.93 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,877 | 410.46 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,819 | 407.73 |
| | Control of bleeding in large bowel using an endoscope | 12 | 297.83 |
| | Destruction of large bowel growths using an endoscope | 26 | 381.05 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 500 | 295.60 |
| | Diagnostic examination of large bowel using an endoscope | 1,194 | 89.86 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 48 | 299.46 |
| | Dilation of esophagus | 1,319 | 130.59 |
| | Injection of large bowel using an endoscope | 45 | 225.06 |
| | Injections of large bowel using an endoscope | 419 | 219.95 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 307 | 340.79 |
| | Removal of large bowel tissue using an endoscope | 500 | 410.36 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 294 | 535.68 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 22 | 502.89 |
| | Removal of polyps or growths of large bowel using an endoscope | 7,324 | 372.62 |
| | Rubber banding of large bowel using an endoscope | 27 | 468.97 |
| | Tying of dilated veins of stomach and/or esophagus using an endoscope | 41 | 585.14 |
| 44 | **Folsom Endoscopy Center Llc** | **2,949** | |
| | Balloon dilation of esophagus using an endoscope | 15 | 667.87 |
| | Biopsy of large bowel using an endoscope | 1,105 | 436.35 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 801 | 300.17 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 98 | 365.45 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 136 | 429.32 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 117 | 318.58 |
| | Diagnostic examination of large bowel using an endoscope | 125 | 295.30 |
| | Dilation of esophagus | 23 | 310.16 |
| | Injections of large bowel using an endoscope | 21 | 312.19 |

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Insertion of guide wire with dilation of esophagus using an endoscope | 53 | 346.11 |
| | Removal of polyps or growths of large bowel using an endoscope | 455 | 502.44 |
| 46 | **Northside Gastroenterology Endoscopy Center Llc** | **18,663** | |
| | Biopsy of large bowel using an endoscope | 5,542 | 156.99 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,746 | 248.22 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 490 | 260.73 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,480 | 332.63 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 598 | 333.25 |
| | Control of bleeding in large bowel using an endoscope | 57 | 213.27 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 594 | 208.89 |
| | Diagnostic examination of large bowel using an endoscope | 811 | 69.12 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 166 | 257.46 |
| | Dilation of esophagus | 1,152 | 105.20 |
| | Injection of large bowel using an endoscope | 15 | 202.46 |
| | Injections of large bowel using an endoscope | 220 | 177.02 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 18 | 262.39 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 128 | 434.85 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 11 | 400.90 |
| | Removal of polyps or growths of large bowel using an endoscope | 4,635 | 297.63 |
| | Oak Lawn Endoscopy Llc | 743 | 158.14 |
| | Biopsy of large bowel using an endoscope | 159 | 270.15 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 231 | 221.72 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 83 | 310.38 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 77 | 308.95 |
| | Diagnostic examination of large bowel using an endoscope | 50 | 310.45 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 12 | 237.09 |
| | Injection of large bowel using an endoscope | 21 | 158.14 |
| | Removal of foreign body of esophagus, stomach, or upper small bowel using an endoscope | 11 | 271.49 |
| | Removal of polyps or growths in large bowel using an endoscope | 13 | 278.59 |
| | Removal of polyps or growths of large bowel using an endoscope | 86 | 309.99 |
| | Lewes De Endoscopy Asc Llc | 11,724 | 108.27 |
| | Biopsy of large bowel using an endoscope | 1,604 | 275.19 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,977 | 235.83 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 397 | 262.63 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,835 | 325.42 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,037 | 331.50 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 95 | 265.37 |
| | Diagnostic examination of large bowel using an endoscope | 627 | 198.50 |
| | Dilation of esophagus | 402 | 108.27 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 7 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Injections of large bowel using an endoscope | 11 | 236.05 |
| | Removal of polyps or growths in large bowel using an endoscope | 27 | 318.61 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,712 | 307.60 |
| 54 | **Northeast Endoscopy Center, Llc** | **14,843** | |
| | Balloon dilation of esophagus using an endoscope | 338 | 435.52 |
| | Biopsy of large bowel using an endoscope | 3,253 | 261.63 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,680 | 232.21 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 273 | 221.38 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 432 | 341.42 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 181 | 327.42 |
| | Control of bleeding in large bowel using an endoscope | 28 | 186.90 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 458 | 239.88 |
| | Diagnostic examination of large bowel using an endoscope | 2,089 | 240.96 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 54 | 217.75 |
| | Injection of large bowel using an endoscope | 16 | 164.44 |
| | Injections of large bowel using an endoscope | 211 | 165.27 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 24 | 270.82 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 135 | 481.64 |
| | Removal of polyps or growths of large bowel using an endoscope | 4,671 | 311.55 |
| 56 | **Pioneer Valley Surgicenter Llc** | **15,045** | |
| | Balloon dilation of esophagus using an endoscope | 492 | 393.37 |
| | Biopsy of large bowel using an endoscope | 2,360 | 278.80 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,019 | 243.02 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 382 | 239.50 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 2,168 | 322.45 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,768 | 324.73 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 670 | 241.84 |
| | Diagnostic examination of large bowel using an endoscope | 851 | 99.17 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 144 | 241.27 |
| | Injection of large bowel using an endoscope | 16 | 280.10 |
| | Injections of large bowel using an endoscope | 150 | 217.10 |
| | Release and relocation of median nerve of hand | 22 | 590.60 |
| | Release and/or relocation of median nerve of hand | 304 | 554.45 |
| | Release of wrist ligament using an endoscope | 195 | 539.87 |
| | Removal of bone joints between wrist and fingers | 11 | 1,242.36 |
| | Removal of polyps or growths of large bowel using an endoscope | 3,209 | 291.71 |
| | Removal of scar tissue to release tendon of palm and finger | 222 | 554.00 |
| | Removal of scar tissue to release tendon of palm or finger | 14 | 417.68 |
| | Reshaping of nasal cartilage | 48 | 492.22 |
| 58 | **Diagnostic Endoscopy Llc** | **12,400** | |
| | Balloon dilation of esophagus using an endoscope | 18 | 467.24 |
| | Biopsy of large bowel using an endoscope | 4,315 | 319.01 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 8 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,149 | 258.24 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 650 | 239.78 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 429 | 342.51 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 469 | 352.64 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 65 | 276.16 |
| | Diagnostic examination of large bowel using an endoscope | 1,589 | 76.84 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 25 | 276.07 |
| | Injection of large bowel using an endoscope | 28 | 208.79 |
| | Injections of large bowel using an endoscope | 160 | 208.00 |
| | Removal of polyps or growths in large bowel using an endoscope | 15 | 299.68 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,488 | 345.29 |
| 60 | **Connecticut Eye Surgery Center South Llc** | **23,681** | |
| | Creation of eye fluid drainage tract | 238 | 611.93 |
| | Creation of eye fluid drainage tracts in iris using laser | 58 | 156.02 |
| | Creation of eye fluid drainage tracts in iris using laser, per session | 464 | 141.84 |
| | Creation of shunt to improve eye fluid flow | 30 | 1,178.53 |
| | Destruction of lens tissue using laser | 118 | 526.77 |
| | Destruction of tissue encircling lens using en endoscope | 156 | 315.17 |
| | Dilation to improve eye fluid flow | 73 | 1,497.73 |
| | Dilation with insertion of device or stent to improve eye fluid flow | 16 | 1,418.87 |
| | Exchange of lens prosthesis | 13 | 781.72 |
| | Extensive repair of turning-outward eyelid defect | 131 | 570.67 |
| | Incision to improve eye fluid flow | 75 | 1,278.09 |
| | Insertion of aqueous fluid drainage device into eye | 23 | 2,249.88 |
| | Insertion of drainage device and creation of fluid reservoir in front chamber of eye | 30 | 2,085.74 |
| | Insertion of eye fluid drainage device | 14 | 2,015.63 |
| | Insertion of lens prosthesis | 12 | 801.99 |
| | Internal insertion of eye fluid drainage device | 59 | 1,579.12 |
| | Laser repair to improve eye fluid flow | 96 | 166.34 |
| | Laser repair to improve eye fluid flow, 1 or more sessions | 592 | 108.60 |
| | Mitomycin, ophthalmic, 0.2 mg | 29 | 289.99 |
| | Removal of cataract with insertion of lens | 18,033 | 790.15 |
| | Removal of excessive skin and fat of upper eyelid | 298 | 463.54 |
| | Removal of excessive skin of upper eyelid | 63 | 472.21 |
| | Removal of eye fluid (vitreous) between the lens and retina | 41 | 1,248.13 |
| | Removal of recurring cataract in lens capsule using laser | 2,610 | 195.00 |
| | Removal of up to one-fourth of the eyelid involving lid margin | 35 | 348.39 |
| | Repair of defect of sclera with graft | 24 | 350.46 |
| | Repair of tendon of upper eyelid | 211 | 484.74 |
| | Repair of turning-inward eyelid defect | 111 | 572.55 |
| | Shortening or advancement of upper eyelid muscle to correct drooping or paralysis | 28 | 566.57 |
| 62 | **The Altamonte Springs Fl Endoscopy Asc Llc** | **10,622** | |
| | Balloon dilation of esophagus using an endoscope | 379 | 374.31 |
| | Biopsy of large bowel using an endoscope | 1,083 | 162.48 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,885 | 220.21 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 9 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 496 | 210.30 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,356 | 295.90 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 793 | 292.67 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 11 | 236.56 |
| | Diagnostic examination of large bowel using an endoscope | 748 | 202.28 |
| | Injections of large bowel using an endoscope | 15 | 206.12 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 47 | 270.75 |
| | Removal of polyps or growths in large bowel using an endoscope | 1,406 | 246.98 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,403 | 284.77 |
| 64 | **Melbourne Asc Lp** | **13,554** | |
| | Balloon dilation of esophagus using an endoscope | 167 | 369.99 |
| | Biopsy of large bowel using an endoscope | 994 | 133.55 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,731 | 208.86 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 335 | 210.31 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,387 | 285.20 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,020 | 286.33 |
| | Destruction of large bowel growths using an endoscope | 165 | 306.42 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 1,373 | 196.89 |
| | Diagnostic examination of large bowel using an endoscope | 901 | 67.62 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 221 | 213.34 |
| | Dilation of esophagus | 892 | 100.67 |
| | Injection of large bowel using an endoscope | 56 | 154.40 |
| | Injections of large bowel using an endoscope | 409 | 162.83 |
| | Removal of growths in large bowel using an endoscope | 34 | 178.39 |
| | Removal of polyps or growths in large bowel using an endoscope | 35 | 154.19 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 26 | 403.98 |
| | Removal of polyps or growths of large bowel using an endoscope | 3,808 | 280.94 |
| 66 | **Ocala Endoscopy Asc Lp** | **25,910** | |
| | Balloon dilation of esophagus using an endoscope | 147 | 367.12 |
| | Biopsy of large bowel using an endoscope | 3,286 | 152.33 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 4,112 | 210.90 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 788 | 202.55 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 3,031 | 290.33 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,462 | 297.16 |
| | Control of bleeding in large bowel using an endoscope | 133 | 186.90 |
| | Control of bleeding of esophagus, stomach, and/or upper small bowel using an endoscope | 30 | 403.02 |
| | Control of bleeding of esophagus, stomach, or upper small bowel using an endoscope | 16 | 352.87 |
| | Destruction of large bowel growths using an endoscope | 50 | 314.69 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 1,728 | 220.65 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 10 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Diagnostic examination of large bowel using an endoscope | 1,974 | 64.06 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 326 | 211.52 |
| | Dilation of esophagus | 193 | 208.66 |
| | Dilation of stomach outlet using an endoscope | 13 | 468.98 |
| | Injection of large bowel using an endoscope | 32 | 167.52 |
| | Injections of large bowel using an endoscope | 214 | 181.87 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 1,332 | 235.41 |
| | Removal of growths in large bowel using an endoscope | 14 | 271.43 |
| | Removal of polyps or growths in large bowel using an endoscope | 11 | 253.90 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 58 | 413.07 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 11 | 379.01 |
| | Removal of polyps or growths of large bowel using an endoscope | 6,949 | 279.58 |
| 68 | **Orlando Fl Endoscopy Asc Llc** | **13,284** | |
| | Balloon dilation of esophagus using an endoscope | 106 | 414.33 |
| | Biopsy of large bowel using an endoscope | 1,474 | 237.85 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,500 | 221.46 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 707 | 206.33 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,339 | 288.80 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 938 | 288.66 |
| | Destruction of large bowel growths using an endoscope | 84 | 235.86 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 272 | 228.75 |
| | Diagnostic examination of large bowel using an endoscope | 1,079 | 194.56 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 53 | 220.43 |
| | Injection of large bowel using an endoscope | 21 | 159.19 |
| | Injections of large bowel using an endoscope | 142 | 153.08 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 246 | 246.53 |
| | Removal of polyps or growths in large bowel using an endoscope | 731 | 241.83 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,592 | 285.96 |
| 70 | **Orlando Mills Fl Endoscopy Asc Llc** | **21,140** | |
| | Balloon dilation of esophagus using an endoscope | 464 | 380.20 |
| | Biopsy of large bowel using an endoscope | 4,902 | 140.95 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 6,614 | 194.98 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 1,113 | 180.78 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 449 | 246.60 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,022 | 271.36 |
| | Control of bleeding in large bowel using an endoscope | 20 | 176.94 |
| | Destruction of internal anal hemorrhoids | 12 | 43.83 |
| | Destruction of large bowel growths using an endoscope | 553 | 305.41 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 93 | 241.20 |
| | Diagnostic examination of large bowel using an endoscope | 2,073 | 57.54 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 20 | 226.91 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 11 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Injection of large bowel using an endoscope | 31 | 179.59 |
| | Injections of large bowel using an endoscope | 218 | 182.51 |
| | Removal of polyps or growths in large bowel using an endoscope | 11 | 248.87 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 28 | 408.45 |
| | Removal of polyps or growths of large bowel using an endoscope | 3,517 | 284.34 |
| **72** | **Surgery Center Of Volusia, Llc** | **26,155** | |
| | Aspiration and/or injection of small joint or joint capsule | 12 | 8.08 |
| | Biopsy of large bowel using an endoscope | 5,442 | 135.26 |
| | Biopsy of small bowel using an endoscope | 13 | 429.71 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 4,809 | 182.11 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 978 | 177.25 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,007 | 268.14 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 405 | 240.18 |
| | Control of bleeding of esophagus, stomach, and/or upper small bowel using an endoscope | 14 | 420.27 |
| | Destruction of internal anal hemorrhoids | 327 | 49.67 |
| | Destruction of large bowel growths using an endoscope | 84 | 308.07 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 729 | 208.74 |
| | Diagnostic examination of large bowel using an endoscope | 867 | 49.90 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 141 | 213.52 |
| | Extensive removal of shoulder joint tissue using an endoscope | 76 | 449.31 |
| | Incision of tendon covering | 604 | 320.37 |
| | Injection of medication or substance into membrane covering eyeball | 140 | 15.85 |
| | Injection, phenylephrine and ketorolac, 4 ml vial | 17 | 357.64 |
| | Injections of large bowel using an endoscope | 132 | 163.67 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 2,138 | 214.93 |
| | Internal insertion of eye fluid drainage device | 46 | 1,826.43 |
| | Phenylephrine 10.16 mg/ml and ketorolac 2.88 mg/ml ophthalmic irrigation solution, 1 ml | 104 | 88.08 |
| | Release and relocation of median nerve of hand | 62 | 526.21 |
| | Release and/or relocation of median nerve of hand | 660 | 486.12 |
| | Release and/or relocation of ulnar nerve at elbow | 16 | 382.39 |
| | Relocation of patient skin to nose, ears, eyelids, and/or lips (20 sq centimeters or less) | 43 | 505.60 |
| | Relocation of tendon of forearm and/or wrist | 77 | 430.59 |
| | Removal (less than 1.5 centimeters) tissue beneath the skin growth of hand or finger | 13 | 509.11 |
| | Removal of bone joints between wrist and fingers | 113 | 608.26 |
| | Removal of both knee cartilages using an endoscope | 64 | 849.26 |
| | Removal of cataract with insertion of lens | 1,723 | 631.49 |
| | Removal of excessive skin and fat of upper eyelid | 155 | 323.25 |
| | Removal of growth of tendon finger or hand | 195 | 415.13 |
| | Removal of growths in large bowel using an endoscope | 16 | 273.55 |
| | Removal of malignant growth (1.1 to 2.0 centimeters) of the face, ears, eyelids, nose, or lips | 103 | 59.32 |
| | Removal of one knee cartilage using an endoscope | 143 | 832.74 |
| | Removal of polyps or growths in large bowel using an endoscope | 39 | 229.79 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 12 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 200 | 402.04 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 26 | 379.41 |
| | Removal of polyps or growths of large bowel using an endoscope | 3,895 | 280.47 |
| | Removal of shoulder joint tissue using an endoscope | 49 | 424.63 |
| | Removal of tissue of palm | 87 | 807.68 |
| | Repair of tendon of upper eyelid | 68 | 438.12 |
| | Repair of torn tendons of shoulder | 17 | 1,342.50 |
| | Repair of torn tendons of shoulder, open procedure | 165 | 1,124.22 |
| | Repair of wound (2.6 to 7.5 centimeters) of forehead, cheeks, chin, mouth, neck, underarms, genitals, hands, and/or feet | 36 | 127.34 |
| | Tissue transfer repair of wound (10 sq centimeters or less) of eyelids, nose, ears, and/or lips | 48 | 481.17 |
| | Tissue transfer repair of wound (10 sq centimeters or less) of eyelids, nose, ears, or lips | 11 | 459.33 |
| | Tissue transfer repair of wound (10 sq centimeters or less) of the forehead, cheeks, chin, mouth, neck, underarms, genitals, hands, or feet | 17 | 401.92 |
| | Tissue transfer repair of wound (30.1 to 60.0 sq centimeters) | 12 | 860.99 |
| | Transplant of tendon of hand | 17 | 858.72 |
| 76 | **Rockledge Fl Endoscopy Asc Llc** | **21,370** | |
| | Balloon dilation of esophagus using an endoscope | 549 | 383.53 |
| | Biopsy of large bowel using an endoscope | 5,176 | 151.79 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 4,488 | 211.30 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 612 | 223.88 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,537 | 298.26 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 666 | 305.63 |
| | Colorectal cancer screening; flexible sigmoidoscopy | 15 | 117.20 |
| | Control of bleeding in large bowel using an endoscope | 74 | 231.50 |
| | Control of bleeding of esophagus, stomach, and/or upper small bowel using an endoscope | 35 | 412.12 |
| | Control of bleeding of esophagus, stomach, or upper small bowel using an endoscope | 12 | 384.68 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 843 | 214.38 |
| | Diagnostic examination of large bowel using an endoscope | 879 | 59.04 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 187 | 235.28 |
| | Dilation of esophagus | 814 | 97.49 |
| | Injection of large bowel using an endoscope | 62 | 169.63 |
| | Injections of large bowel using an endoscope | 313 | 172.97 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 281 | 272.81 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 110 | 406.48 |
| | Removal of polyps or growths of large bowel using an endoscope | 4,622 | 266.50 |
| | Ultrasound examination of esophagus, stomach and/or upper small bowel using an endoscope | 73 | 448.31 |
| | Ultrasound guided needle aspiration or biopsy of esophagus, stomach, and/or upper small bowel using an endoscope | 22 | 471.32 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 13 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| 78 | **Tampa Fl Endoscopy Asc Llc** | **12,815** | |
| | Balloon dilation of esophagus using an endoscope | 65 | 388.70 |
| | Biopsy of large bowel using an endoscope | 1,958 | 204.88 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,382 | 234.32 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 641 | 220.87 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,033 | 292.40 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,558 | 296.00 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 298 | 219.65 |
| | Diagnostic examination of large bowel using an endoscope | 1,113 | 217.65 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 79 | 219.32 |
| | Dilation of esophagus | 447 | 99.96 |
| | Injections of large bowel using an endoscope | 11 | 209.33 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 37 | 261.84 |
| | Removal of hemorrhoid by rubber banding | 39 | 81.19 |
| | Removal of polyps or growths in large bowel using an endoscope | 79 | 264.52 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 13 | 336.97 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,062 | 287.74 |
| 80 | **Westglen Endoscopy Center Llc** | **7,613** | |
| | Biopsy of large bowel using an endoscope | 1,661 | 263.82 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,751 | 202.75 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 446 | 217.86 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 717 | 278.73 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 517 | 289.11 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 358 | 189.88 |
| | Diagnostic examination of large bowel using an endoscope | 477 | 219.66 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 66 | 237.03 |
| | Dilation of esophagus | 843 | 103.78 |
| | Injection of large bowel using an endoscope | 22 | 183.86 |
| | Injections of large bowel using an endoscope | 53 | 209.91 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 53 | 245.56 |
| | Removal of polyps or growths of large bowel using an endoscope | 649 | 294.90 |
| 83 | **Eastern Shore Endoscopy, Llc** | **17,006** | |
| | Balloon dilation of esophagus using an endoscope | 270 | 392.64 |
| | Biopsy of large bowel using an endoscope | 3,669 | 193.00 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,350 | 229.93 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 342 | 239.18 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 704 | 324.47 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 228 | 327.24 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 612 | 204.46 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 14 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Diagnostic examination of large bowel using an endoscope | 2,662 | 84.59 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 57 | 254.85 |
| | Dilation of esophagus | 148 | 240.89 |
| | Injections of large bowel using an endoscope | 109 | 163.63 |
| | Removal of polyps or growths in large bowel using an endoscope | 971 | 267.05 |
| | Removal of polyps or growths of large bowel using an endoscope | 3,884 | 291.84 |
| 85 | **Maryland Endoscopy Center Llc** | **10,335** | |
| | Biopsy of large bowel using an endoscope | 1,635 | 269.45 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,187 | 227.05 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 464 | 221.41 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,712 | 310.33 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,057 | 304.70 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 326 | 211.58 |
| | Diagnostic examination of large bowel using an endoscope | 733 | 212.54 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 46 | 237.78 |
| | Dilation of esophagus | 173 | 112.55 |
| | Injection of large bowel using an endoscope | 27 | 198.54 |
| | Injections of large bowel using an endoscope | 238 | 230.62 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 12 | 233.83 |
| | Removal of polyps or growths in large bowel using an endoscope | 566 | 278.60 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,159 | 301.82 |
| | Carroll County Digestive Disease Center, Llc | 14,936 | 181.34 |
| | Biopsy of large bowel using an endoscope | 1,958 | 251.39 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 4,034 | 221.63 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 617 | 211.45 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 798 | 311.41 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 742 | 307.89 |
| | Control of bleeding in large bowel using an endoscope | 14 | 181.34 |
| | Destruction of large bowel growths using an endoscope | 123 | 320.59 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 96 | 212.48 |
| | Diagnostic examination of large bowel using an endoscope | 1,689 | 220.62 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 23 | 255.24 |
| | Injections of large bowel using an endoscope | 72 | 220.17 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 1,002 | 236.23 |
| | Removal of growths in large bowel using an endoscope | 22 | 224.52 |
| | Removal of polyps or growths in large bowel using an endoscope | 1,756 | 206.12 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,990 | 300.17 |
| 89 | **32nd Street Surgery Center, Llc** | **12,879** | |
| | Balloon dilation of bile or pancreatic duct using an endoscope | 17 | 459.84 |
| | Balloon dilation of esophagus using an endoscope | 95 | 352.31 |
| | Biopsy of large bowel using an endoscope | 2,024 | 148.72 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,523 | 195.39 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 15 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 273 | 181.53 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 369 | 276.27 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 632 | 271.28 |
| | Control of bleeding in large bowel using an endoscope | 13 | 210.03 |
| | Correction of bunion | 11 | 890.31 |
| | Correction of toe joint deformity | 217 | 385.73 |
| | Destruction of lens tissue using laser | 24 | 555.70 |
| | Destruction of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 14 | 365.56 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 797 | 211.48 |
| | Diagnostic examination of large bowel using an endoscope | 1,344 | 55.35 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 147 | 202.59 |
| | Dilation of stomach outlet using an endoscope | 25 | 326.90 |
| | Drainage of fluid from abdominal cavity | 102 | 179.27 |
| | Incision of pancreatic outlet muscle using an endoscope | 35 | 417.87 |
| | Incision of tissues of muscle compartment of foot and/or toe | 25 | 563.60 |
| | Incision to improve eye fluid flow | 23 | 1,123.58 |
| | Injection of large bowel using an endoscope | 20 | 203.74 |
| | Injections of large bowel using an endoscope | 113 | 208.90 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 836 | 221.91 |
| | Insertion of tube or stent into bile or pancreatic duct using an endoscope | 13 | 737.01 |
| | Insertion or replacement of peripheral or gastric neurostimulator generator | 11 | 10,864.31 |
| | Internal insertion of eye fluid drainage device | 116 | 1,210.68 |
| | Needle biopsy of liver | 12 | 267.67 |
| | Removal of cataract with insertion of lens | 2,682 | 632.38 |
| | Removal of fibrous nerve growth from between toes | 13 | 527.36 |
| | Removal of foreign body or change of pancreatic or bile duct tube or stent using an endoscope | 15 | 808.16 |
| | Removal of foreign body or stent from pancreatic or bile duct using an endoscope | 12 | 546.61 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 11 | 388.85 |
| | Removal of polyps or growths of large bowel using an endoscope | 922 | 259.24 |
| | Removal of recurring cataract in lens capsule using laser | 358 | 160.01 |
| | Removal of stone from bile or pancreatic duct using an endoscope | 18 | 455.80 |
| | Tying of dilated veins of stomach or esophagus using an endoscope | 17 | 354.50 |
| 91 | **Greensboro Nc Endoscopy Asc Llc** | **2,359** | |
| | Biopsy of large bowel using an endoscope | 451 | 223.27 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 244 | 189.04 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 59 | 172.27 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 135 | 264.72 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 200 | 288.64 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 209 | 209.94 |
| | Diagnostic examination of large bowel using an endoscope | 149 | 183.09 |

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 66 | 198.53 |
| | Removal of polyps or growths of large bowel using an endoscope | 846 | 282.08 |
| 93 | **Cincinnati Asc Llc** | **4,481** | |
| | Balloon dilation of esophagus using an endoscope | 12 | 463.60 |
| | Biopsy of large bowel using an endoscope | 1,370 | 229.08 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 663 | 225.99 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 93 | 216.90 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 499 | 319.97 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 313 | 290.27 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 203 | 234.29 |
| | Diagnostic examination of large bowel using an endoscope | 249 | 226.42 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 20 | 215.64 |
| | Dilation of esophagus | 17 | 280.25 |
| | Injection of large bowel using an endoscope | 14 | 170.38 |
| | Injections of large bowel using an endoscope | 26 | 166.43 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 64 | 269.27 |
| | Removal of polyps or growths of large bowel using an endoscope | 938 | 285.33 |
| 95 | **Toledo Endoscopy Asc Llc** | **8,092** | |
| | Biopsy of large bowel using an endoscope | 1,614 | 187.64 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,893 | 227.04 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 357 | 207.21 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 569 | 303.13 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 829 | 300.77 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 257 | 249.61 |
| | Diagnostic examination of large bowel using an endoscope | 646 | 94.24 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 38 | 227.16 |
| | Injections of large bowel using an endoscope | 28 | 232.14 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 589 | 241.56 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,272 | 285.85 |
| 97 | **Willoughby Asc Llc** | **3,401** | |
| | Biopsy of large bowel using an endoscope | 479 | 277.82 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 585 | 236.33 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 261 | 217.30 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 528 | 291.05 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 303 | 284.69 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 370 | 250.48 |
| | Diagnostic examination of large bowel using an endoscope | 423 | 222.84 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 67 | 217.68 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 17 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Insertion of guide wire with dilation of esophagus using an endoscope | 20 | 242.86 |
| | Removal of polyps or growths of large bowel using an endoscope | 365 | 289.34 |
| **100** | **Tulsa Ok Endoscopy Asc Llc** | **29,592** | |
| | Balloon dilation of esophagus using an endoscope | 2,577 | 365.96 |
| | Biopsy of large bowel using an endoscope | 6,172 | 224.70 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 7,567 | 182.71 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 1,096 | 172.71 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,930 | 269.23 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,126 | 268.36 |
| | Control of bleeding in large bowel using an endoscope | 26 | 231.63 |
| | Control of bleeding of esophagus, stomach, and/or upper small bowel using an endoscope | 11 | 384.15 |
| | Destruction of esophageal polyps or growths using an endoscope | 62 | 745.61 |
| | Destruction of growths of esophagus using an endoscope | 87 | 729.25 |
| | Destruction of large bowel growths using an endoscope | 11 | 368.46 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 365 | 214.00 |
| | Diagnostic examination of large bowel using an endoscope | 1,488 | 60.58 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 61 | 209.47 |
| | Dilation of stomach outlet using an endoscope | 13 | 415.06 |
| | Injection of large bowel using an endoscope | 45 | 157.65 |
| | Injections of large bowel using an endoscope | 255 | 173.09 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 16 | 269.41 |
| | Removal of hemorrhoid by rubber banding | 454 | 114.97 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 219 | 389.18 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 20 | 371.06 |
| | Removal of polyps or growths of large bowel using an endoscope | 5,991 | 267.52 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 18 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| 102 | **Cascade Endoscopy Center, Llc** | **5,585** | |
| | Biopsy of large bowel using an endoscope | 2,043 | 261.97 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 693 | 223.33 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 120 | 221.32 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 341 | 343.81 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 332 | 353.12 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 12 | 302.25 |
| | Diagnostic examination of large bowel using an endoscope | 55 | 324.83 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 12 | 221.91 |
| | Injection of large bowel using an endoscope | 40 | 168.28 |
| | Injections of large bowel using an endoscope | 198 | 177.99 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 93 | 243.01 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,646 | 317.40 |
| 104 | **Surgical Specialty Center Of Northeastern Pennsylvania, Llc** | **14,288** | |
| | Correction of bunion | 31 | 994.04 |
| | Correction of toe joint deformity | 122 | 487.23 |
| | Creation of eye fluid drainage tract | 13 | 596.22 |
| | Creation of eye fluid drainage tracts in iris using laser, per session | 449 | 122.86 |
| | Destruction of tissue encircling lens using en endoscope | 153 | 351.83 |
| | Exploration of nasal sinus using an endoscope | 16 | 769.10 |
| | Extensive repair of turning-outward eyelid defect | 13 | 476.13 |
| | Incision of eardrum with insertion of eardrum tube under general anesthesia | 33 | 343.32 |
| | Incision of nasal sinus using an endoscope | 15 | 464.07 |
| | Incision of tendon covering | 246 | 402.77 |
| | Injection of diagnostic or therapeutic substances into upper or middle spine | 121 | 219.90 |
| | Injection of substance into spinal canal of lower back or sacrum using imaging guidance | 142 | 188.94 |
| | Injection, phenylephrine and ketorolac, 4 ml vial | 806 | 360.74 |
| | Injections of lower or sacral spine facet joint using imaging guidance | 24 | 210.52 |
| | Injections of substances into lower or sacral spine | 253 | 229.55 |
| | Insertion of aqueous fluid drainage device into eye | 18 | 1,904.11 |
| | Internal insertion of eye fluid drainage device | 344 | 1,288.18 |
| | Laser destruction of eye fluid (vitreous) between the lens and retina | 12 | 1,241.83 |
| | Laser destruction of leaking retinal blood vessels, 1 or more sessions | 266 | 121.64 |
| | Laser destruction of retinal growth, 1 or more sessions | 104 | 165.63 |
| | Laser repair to improve eye fluid flow, 1 or more sessions | 477 | 88.29 |
| | Partial removal of breast | 90 | 701.01 |
| | Phenylephrine 10.16 mg/ml and ketorolac 2.88 mg/ml ophthalmic irrigation solution, 1 ml | 144 | 88.08 |
| | Release and relocation of median nerve of hand | 43 | 530.01 |
| | Release and/or relocation of median nerve of hand | 130 | 492.77 |
| | Removal nasal sinus tissue using an endoscope | 19 | 559.18 |
| | Removal of breast growth | 15 | 750.22 |
| | Removal of breast growth, open procedure | 11 | 773.22 |
| | Removal of cataract with insertion of lens | 7,440 | 670.68 |
| | Removal of excessive skin and fat of upper eyelid | 24 | 448.66 |
| | Removal of eye fluid (vitreous) between the lens and retina | 44 | 1,059.42 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 19 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Removal of membrane from the retina, pars plana approach | 41 | 1,230.12 |
| | Removal of nasal sinus tissue using an endoscope | 14 | 408.81 |
| | Removal of nasal sinus using an endoscope | 35 | 532.05 |
| | Removal of one knee cartilage using an endoscope | 12 | 848.71 |
| | Removal of recurring cataract in lens capsule using laser | 2,339 | 155.35 |
| | Removal of tissue, muscle, and membrane to correct eyelid drooping or paralysis | 19 | 444.25 |
| | Repair of tendon of upper eyelid | 94 | 417.18 |
| | Repair of turning-inward eyelid defect | 12 | 544.81 |
| | Reshaping of nasal cartilage | 72 | 456.87 |
| | Shortening or advancement of upper eyelid muscle to correct drooping or paralysis | 32 | 447.88 |
| 106 | **The Pottsville Pa Endoscopy Asc Lp** | **13,383** | |
| | Biopsy of large bowel using an endoscope | 1,918 | 172.38 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,134 | 230.80 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 490 | 226.83 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 576 | 292.74 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 428 | 293.22 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 1,079 | 180.72 |
| | Diagnostic examination of large bowel using an endoscope | 1,595 | 240.56 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 194 | 235.93 |
| | Dilation of esophagus | 1,275 | 98.02 |
| | Injection of large bowel using an endoscope | 11 | 216.75 |
| | Injections of large bowel using an endoscope | 36 | 198.67 |
| | Removal of hemorrhoid by rubber banding | 63 | 75.74 |
| | Removal of polyps or growths in large bowel using an endoscope | 51 | 231.06 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 130 | 395.52 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 26 | 372.05 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,377 | 275.06 |
| 107 | **West Chester Endoscopy Llc** | **17,935** | |
| | Biopsy of large bowel using an endoscope | 4,240 | 190.79 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,901 | 226.00 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 484 | 222.61 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,144 | 332.45 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 738 | 330.27 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 225 | 239.89 |
| | Diagnostic examination of large bowel using an endoscope | 866 | 74.92 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 26 | 214.78 |
| | Injection of large bowel using an endoscope | 17 | 167.50 |
| | Injections of large bowel using an endoscope | 110 | 166.35 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 252 | 239.20 |
| | Removal of hemorrhoid by rubber banding | 238 | 63.26 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 20 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 35 | 468.83 |
| | Removal of polyps or growths of large bowel using an endoscope | 5,659 | 315.97 |
| 113 | **Columbia Asc Northwest Llc** | **5,022** | |
| | Biopsy of large bowel using an endoscope | 1,255 | 253.32 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 914 | 210.31 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 148 | 235.81 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 481 | 300.04 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 514 | 300.91 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 272 | 185.08 |
| | Diagnostic examination of large bowel using an endoscope | 249 | 204.87 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 35 | 230.10 |
| | Dilation of esophagus | 392 | 125.34 |
| | Injections of large bowel using an endoscope | 26 | 184.04 |
| | Removal of polyps or growths in large bowel using an endoscope | 104 | 271.26 |
| | Removal of polyps or growths of large bowel using an endoscope | 632 | 283.64 |
| 115 | **Greenville Asc Llc** | **10,263** | |
| | Balloon dilation of esophagus using an endoscope | 187 | 380.03 |
| | Biopsy of large bowel using an endoscope | 2,610 | 257.40 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,335 | 203.55 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 327 | 198.95 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 756 | 282.67 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 292 | 271.12 |
| | Destruction of large bowel growths using an endoscope | 14 | 375.39 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 685 | 192.72 |
| | Diagnostic examination of large bowel using an endoscope | 579 | 198.63 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 43 | 215.31 |
| | Dilation of esophagus | 666 | 105.22 |
| | Injections of large bowel using an endoscope | 65 | 222.26 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 97 | 256.16 |
| | Removal of polyps or growths in large bowel using an endoscope | 28 | 247.97 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,579 | 297.25 |
| 117 | **Chattanooga Endoscopy Asc Llc** | **13,821** | |
| | Biopsy of large bowel using an endoscope | 3,545 | 260.92 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 3,260 | 189.87 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 225 | 190.41 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,310 | 285.50 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 660 | 273.19 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 287 | 204.42 |
| | Diagnostic examination of large bowel using an endoscope | 595 | 166.34 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 21 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 13 | 215.46 |
| | Dilation of esophagus | 28 | 174.18 |
| | Injections of large bowel using an endoscope | 59 | 181.57 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 1,123 | 217.82 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 25 | 426.66 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,691 | 280.67 |
| 119 | **Columbia Tn Endoscopy Asc Llc** | **10,988** | |
| | Balloon dilation of esophagus using an endoscope | 290 | 351.21 |
| | Biopsy of large bowel using an endoscope | 705 | 243.63 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,094 | 191.46 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 245 | 192.28 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,034 | 264.97 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 808 | 253.69 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 1,689 | 164.84 |
| | Diagnostic examination of large bowel using an endoscope | 796 | 206.43 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 311 | 202.09 |
| | Dilation of esophagus | 1,915 | 92.82 |
| | Injection of large bowel using an endoscope | 11 | 176.74 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,090 | 263.77 |
| 121 | **Hermitage Tn Endoscopy Asc, Llc** | **7,883** | |
| | Balloon dilation of esophagus using an endoscope | 40 | 466.32 |
| | Biopsy of large bowel using an endoscope | 796 | 214.82 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,643 | 218.91 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 250 | 214.67 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 960 | 298.32 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 455 | 294.96 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 432 | 212.88 |
| | Diagnostic examination of large bowel using an endoscope | 746 | 76.08 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 49 | 237.76 |
| | Injections of large bowel using an endoscope | 22 | 197.75 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 520 | 236.66 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,970 | 281.22 |
| 125 | **Abilene Asc Lp** | **11,981** | |
| | Balloon dilation of esophagus using an endoscope | 511 | 369.70 |
| | Biopsy of large bowel using an endoscope | 1,161 | 150.36 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,834 | 202.99 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 598 | 219.25 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,462 | 295.06 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 846 | 291.63 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 22 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 210 | 198.25 |
| | Diagnostic examination of large bowel using an endoscope | 879 | 210.97 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 55 | 241.30 |
| | Dilation of esophagus | 862 | 96.78 |
| | Injection of large bowel using an endoscope | 16 | 157.28 |
| | Injections of large bowel using an endoscope | 96 | 162.04 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,451 | 276.01 |
| 127 | **Central Texas Endoscopy Center Llc** | **14,915** | |
| | Balloon dilation of esophagus using an endoscope | 310 | 395.05 |
| | Biopsy of large bowel using an endoscope | 1,615 | 250.96 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 2,691 | 204.60 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 421 | 197.44 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,409 | 287.21 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,026 | 276.67 |
| | Destruction of large bowel growths using an endoscope | 11 | 345.45 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 1,177 | 192.51 |
| | Diagnostic examination of large bowel using an endoscope | 747 | 184.33 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 198 | 213.82 |
| | Dilation of esophagus | 639 | 104.48 |
| | Injection of large bowel using an endoscope | 30 | 159.74 |
| | Injections of large bowel using an endoscope | 260 | 169.76 |
| | Insertion of guide wire with dilation of esophagus using an endoscope | 240 | 214.20 |
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 55 | 444.84 |
| | Removal of polyps or growths of esophagus, stomach, or upper small bowel using an endoscope | 13 | 402.36 |
| | Removal of polyps or growths of large bowel using an endoscope | 4,073 | 292.69 |
| 129 | **El Paso Asc Lp** | **15,731** | |
| | Balloon dilation of esophagus using an endoscope | 265 | 378.31 |
| | Biopsy of large bowel using an endoscope | 2,628 | 253.30 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 4,307 | 213.77 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 887 | 200.39 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 1,197 | 278.51 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 1,755 | 283.10 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 258 | 206.68 |
| | Diagnostic examination of large bowel using an endoscope | 1,433 | 183.81 |
| | Diagnostic examination of stomach and upper upper small bowel using an endoscope | 52 | 221.41 |
| | Injection of large bowel using an endoscope | 23 | 153.53 |
| | Injections of large bowel using an endoscope | 100 | 157.71 |
| | Removal of hemorrhoid by rubber banding | 16 | 70.50 |
| | Removal of large bowel tissue using an endoscope | 14 | 303.44 |

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 23 of 24

| Complaint Paragraph | Defendant ASC | Total Services | Avg Medicare Payment |
|---|---|---|---|
| | Removal of polyps or growths of esophagus, stomach, and/or upper small bowel using an endoscope | 43 | 399.70 |
| | Removal of polyps or growths of large bowel using an endoscope | 2,753 | 277.57 |
| 131 | **Shenandoah Tx Endoscopy Asc Llc** | **6,973** | |
| | Balloon dilation of esophagus using an endoscope | 13 | 407.00 |
| | Biopsy of large bowel using an endoscope | 2,266 | 180.73 |
| | Biopsy of the esophagus, stomach, and/or upper small bowel using an endoscope | 1,766 | 247.23 |
| | Biopsy of the esophagus, stomach, or upper small bowel using an endoscope | 268 | 241.01 |
| | Colorectal cancer screening; colonoscopy on individual at high risk | 604 | 329.84 |
| | Colorectal cancer screening; colonoscopy on individual not meeting criteria for high risk | 616 | 318.52 |
| | Diagnostic examination of esophagus, stomach, and/or upper small bowel using an endoscope | 12 | 321.45 |
| | Diagnostic examination of large bowel using an endoscope | 344 | 219.23 |
| | Removal of polyps or growths of large bowel using an endoscope | 1,084 | 292.59 |

**Grand Total** 653,750

U.S. ex rel Waters. v. Envision Healthcare Corp., et al.
No. 2:19-cv-0873 TLN

Attachment A
Page 24 of 24